Willie Albert FLUDD,
Plaintiff–Appellant,

v.

J.B. DYKES, Sheriff of Richmond County, Georgia and Frank Tiller,
Defendants–Appellees.

No. 87–8244.

United States Court of Appeals,
Eleventh Circuit.

Jan. 17, 1989.

John P. Batson, Augusta, Ga., for plaintiff-appellant.

Robert C. Daniel, Jr., and James W. Ellison, Burnside, Wall & Daniel, Augusta, Ga., for defendants-appellees.

Before TJOFLAT and EDMONDSON, Circuit Judges, and WISDOM *, Senior Circuit Judge.

TJOFLAT, Circuit Judge:

During the selection of the jury in this civil rights suit, brought by a black citizen against a police officer and his supervisor, both of whom are white, the defendants peremptorily challenged the two black persons on the venire; as a result, an all-white jury was chosen to try the case. Plaintiff's counsel objected to these challenges on the ground that they were racially motivated and, citing *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), argued that defense counsel had to give a racially neutral explanation for their action or abandon the challenges. The court overruled the objection, holding that *Batson*, which involved a criminal prosecution, has no application in civil cases. The jury subsequently returned a defense verdict,[1] and the plaintiff, hereafter the appellant, took this appeal.

We hold that *Batson v. Kentucky* applies in civil as well as criminal cases. The district court thus erred in refusing to con-

---

* Honorable John Minor Wisdom, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

1. The verdict for the Sheriff of Richmond County, the appellee Dykes, was directed by the district court. The court had concluded, at the close of all of the evidence, that the appellant failed to show that any conduct on the sheriff's part had caused any of the appellant's injuries. Appellant contends that the court erred in this ruling. We find no error and accordingly affirm the judgment for the appellee Dykes without further discussion.

sider *Batson's* mandate. We remand the case, as *Batson* requires, so that the district court can determine whether the appellees' attorney challenged the two black jurors because they were black or for some nonracially discriminatory reason.

## I.

This case arose out of a police-citizen encounter: the appellant was shot by a deputy sheriff of Richmond County, Georgia, while the deputy was attempting to take a suspected narcotics trafficker into custody. The appellant contended that the officer's conduct, in shooting him, constituted an unreasonable seizure and, also, a denial of substantive due process, in violation of the fourth and fourteenth amendments to the United States Constitution,[2] and he sought money damages against the officer and his supervisor, the Sheriff of Richmond County, under 42 U.S.C. § 1983 (1982). After the parties joined issue and completed their discovery, the case proceeded to trial.

A jury, consisting of six persons chosen from a venire of fifteen persons, tried the case. Each party was allowed three peremptory challenges to the twelve members of the venire proposed for the six positions on the jury; in addition, each party could make one peremptory challenge to the three members of the venire proposed for the one alternate juror position. Following a voir dire examination conducted by the court and counsel, the parties struck the jury, exercising all of their peremptory challenges in the following manner. The persons numbered one through twelve on the venire list were tendered to appellant; he struck one person, then tendered the eleven remaining to the appellees. The appellees struck one person and tendered the ten remaining to appellant. This process continued until each side had exhausted its three peremptory challenges; the six venire persons remaining constituted the jury. The parties then moved to the three venire persons proposed for the alternate's position and, after striking two of them, selected the alternate.

At the conclusion of this selection process, but before the jury was sworn, the appellant drew the court's attention to the *Batson* decision and asked the court to require the appellees' attorney to explain why he had struck the two blacks from the venire. After a brief colloquy with counsel, the court ruled that *Batson*'s holding, being "limited to criminal cases," was inapplicable and denied appellant's request. Appellant, to preserve the issue for appellate review, then moved the court to discharge the panel and to begin the jury selection process anew. The court denied his motion.

In this appeal, appellant presents several grounds for reversal, including his objection to the appellees' challenge of the black venire persons. Only appellant's *Batson* claim is worthy of discussion.

## II.

The appellant argues that the appellees' successful use of their peremptory challenges denied him the equal protection of the laws as guaranteed by the due process clause of the fifth amendment.[3] The objection is that a district court denies a black litigant the equal protection of the laws whenever it permits his adversary—whether the government or a private party—to use a peremptory challenge to reduce the black litigant's chances of being tried by a jury containing his racial peers. Implicit in the objection is the notion that were the black litigant white, his adversary could not, and would not, use the peremptory challenge to reduce the white litigant's chances of being tried by a jury containing his racial peers.

---

**2.** The appellant also contended that the officer's conduct violated appellant's first amendment right to free speech. This claim is patently frivolous and will receive no further discussion.

**3.** The right to the equal protection of the laws expressed in the fourteenth amendment has been found by implication in the due process clause of the fifth amendment, which contains no equal protection clause. *See Johnson v. Robison,* 415 U.S. 361, 364 n. 4, 94 S.Ct. 1160, 1164 n. 4, 39 L.Ed.2d 389 (1974); *United States v. Perez–Hernandez,* 672 F.2d 1380, 1385 (11th Cir. 1982).

It is a fundamental principle of equal protection law that a court cannot grant a white person the right to be tried by a jury containing his racial peers and, at the same time, deny a black person the same right. This principle has been a part of our jurisprudence since the Supreme Court's decision in *Strauder v. West Virginia*, 100 U.S. 303, 25 L.Ed. 664 (1879). In that case, a black man, Strauder, was charged with murder. An all-white venire was summoned for the trial, pursuant to a West Virginia statute that limited jury service to white males. Before the process of selecting the jury began, Strauder objected to the state's refusal to accord him the same right it gave to a white accused—the right to be tried by a jury selected from a venire from which his racial peers were not excluded on account of their race. The court overruled Strauder's objection, and he was convicted by the all-white jury.

The Supreme Court of West Virginia affirmed Strauder's conviction. *See State v. Strauder*, 11 W.Va. 745 (1877). The United States Supreme Court, however, set the conviction aside, holding that the state trial court denied Strauder the equal protection of the laws guaranteed him by the fourteenth amendment when it forced him to proceed to trial before a jury drawn from an all-white venire. The Court observed that "[t]he very idea of a jury is a body ... composed of the peers or equals of the person whose rights it is selected or summoned to determine." 100 U.S. at 308. The Court then concluded that Strauder's jury could not have been such a body because the state had barred his racial peers from jury service. The Court went on to say that blacks had to be included among those eligible for jury service if Strauder

was to be protected against the racial prejudice that the fourteenth amendment was designed to eliminate:

> It is not easy to comprehend how it can be said that while every white man is entitled to a trial by a jury selected from persons of his own race or color, or, rather, selected without discrimination against his color, and a negro is not, the latter is equally protected by the law with the former. Is not protection of life and liberty against race or color prejudice, a right, a legal right, under the constitutional amendment? And how can it be maintained that compelling a colored man to submit to a trial for his life by a jury drawn from a panel from which the State has expressly excluded every man of his race, because of color alone, however well qualified in other respects, is not a denial to him of equal legal protection?

*Id.* at 309.[4]

Under *Strauder*, the equal protection clause, standing alone, does *not* guarantee a black accused the right to a jury selected from a venire containing his racial peers. Rather, *Strauder* stands for the proposition that the state cannot discriminate against a black defendant by denying him a right it accords a white defendant: the right to be tried "by a jury selected from persons of his own race ... without discrimination against his color." *Id.* Implicit in this teaching is the thought that whenever an accused is denied this right, his case is presumptively prejudiced. It is prejudiced because he loses any advantage that he might gain from having his racial peers on the jury or, conversely, he suffers any disadvantage that might result from having no racial peers on the jury.[5]

---

**4.** A panel from which black citizens have been excluded by state law would also be proscribed by the sixth amendment, as applied by the fourteenth amendment, which guarantees a defendant a jury drawn from a panel composed of a fair cross-section of the community. *See Taylor v. Louisiana*, 419 U.S. 522, 530, 95 S.Ct. 692, 697–98, 42 L.Ed.2d 690 (1975). The sixth amendment was not applicable to the states at the time *Strauder* was decided, which doubtlessly explains why the Supreme Court made no reference to the amendment in its opinion.

**5.** The sympathy that a racial peer may have for the accused—which a reviewing court must presume to exist if it is to find that the exclusion of racial peers from jury service materially prejudiced the accused's case and thereby tainted the verdict against him—cannot, however, be used as a reason for peremptorily challenging that racial peer:

> Just as the Equal Protection Clause forbids the States to exclude black persons from the venire on the assumption that blacks as a group are unqualified to serve as jurors, so it

In *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), the Supreme Court recognized that an equal protection claim, like that in *Strauder*, might apply to peremptory challenges. In *Swain*, the petitioner, who had been convicted of rape in the circuit court of Talladega County, Alabama, claimed that the trial judge denied him the equal protection of the laws when he permitted the prosecutor to exercise the state's peremptory challenges to rid the venire of blacks because of their race. The jury had been chosen in the same manner as the jury in the instant case: after the court qualified the venire, the parties, exercising all of their peremptory challenges, reduced the venire to twelve, the required number of jurors. During this process, the prosecutor used his peremptory challenges to strike all six blacks on the venire.

After the jury of twelve had been chosen, the petitioner moved the trial court to disqualify the jury on the ground that the prosecutor, in exercising the state's peremptory challenges, intended to, and did, deprive the petitioner of the possibility of having any blacks empaneled to try the case. The petitioner argued that if the court permitted the case to go to trial with a jury so chosen, he would be denied the equal protection of the laws.

In order to establish his equal protection claim, the petitioner cited two pieces of circumstantial evidence as proof of the prosecutor's discriminatory intent: (1) the prosecutor's peremptory challenge of all the black venire persons in the petitioner's own case, and (2) the state's historic practice of using peremptory challenges to strike all blacks who had been summoned during the previous twelve years to try criminal cases in Talladega County. The state, responding, contended that an inference of discriminatory intent could not reasonably be drawn from this evidence; the

trial judge agreed, and denied the petitioner's motion.

The Supreme Court refused to disturb the petitioner's conviction. In reviewing the evidence to determine whether the petitioner had proven that the prosecutor had purposefully discriminated against the black members of the venire on account of their race, the Court disregarded the probative value of the petitioner's first piece of circumstantial evidence. The Court did so by presuming that the prosecutor, in exercising the state's peremptory challenges, was "acting on acceptable considerations related to the case he [was] trying, the particular defendant involved and the particular crime charged." *Id.* at 223, 85 S.Ct. at 837. The Court found that this presumption was warranted "[i]n light of the purpose of the peremptory system and the function it serves in a pluralistic society in connection with the institution of jury trial." *Id.* at 222, 85 S.Ct. at 837. In the Court's view, it was inappropriate to examine the prosecutor's reasons for the exercise of his challenges in any given case:

> The presumption in any particular case must be that the prosecutor is using the State's challenges to obtain a fair and impartial jury to try the case before the court. The presumption is not overcome and the prosecutor therefore subjected to examination by allegations that in the case at hand all Negroes were removed from the jury or that they were removed because they were Negroes. Any other result, we think, would establish a rule wholly at odds with [the] peremptory challenge system as we know it.

*Id.*

After *Swain*, a black accused had to rely on circumstantial evidence concerning the prosecutor's conduct in *other* cases to prove that the prosecutor's purpose in challenging black venire persons was to discriminate against them on the basis of

---

forbids the States to strike black veniremen on the assumption that they will be biased in a particular case simply because the defendant is black. The core guarantee of equal protection, ensuring citizens that their State will not discriminate on account of race, would be meaningless were we to approve the exclusion of jurors on the basis of such assumptions, which arise solely from the jurors' race.

*Batson,* 476 U.S. at 97–98, 106 S.Ct. at 1723 (citation omitted).

race. Specifically, the accused had to show that the prosecutor:

> in case after case, whatever the circumstances, whatever the crime, and whoever the defendant or the victim ..., [had been] responsible for the removal of Negroes who [were] selected as qualified jurors by the jury commissioners and ... survived challenges for cause, with the result that no Negroes ever serve[d] on petit juries....

*Id.* at 223, 85 S.Ct. at 837. According to the *Swain* court:

> In these circumstances, giving even the widest leeway to the operation of irrational but trial-related suspicions and antagonisms, ... the purpose of the peremptory challenge [has been] perverted. If the State has not seen fit to leave a single Negro on any jury in a criminal case, the presumption protecting the prosecutor may well [have been] overcome. Such proof might support a reasonable inference that Negroes are excluded from juries for reasons wholly unrelated to the outcome of the particular case on trial and that the peremptory system is being used to deny the Negro the same right and opportunity to participate in the administration of justice enjoyed by the white population. These ends the peremptory challenge is not designed to facilitate or justify.

*Id.* at 223–24, 85 S.Ct. at 837–38. Thus, in *Swain*, the Supreme Court recognized the possibility that the use of peremptory challenges could violate the equal protection clause; the accused, however, faced a crippling evidentiary burden to establish such discrimination.

In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court reassessed *Swain's* holding and the rationale on which it was based. The Court initially reconsidered whether the prosecutor's striking of an accused's racial peers from a venire could be used as circumstantial evidence of the prosecutor's discriminatory intent. The Court noted that "peremptory challenges ... permit[ ] 'those to discriminate who are of a mind to discriminate,' " 476 U.S. at 96, 106 S.Ct. at 1723 (quoting *Avery v. Georgia*, 345 U.S. 559, 562, 73 S.Ct. 891, 892, 97 L.Ed. 1244 (1953)), and recognized that in some cases the prosecutor's exercise of peremptory challenges, standing alone, might permit an inference of purposeful discrimination. *See id.* at 96, 106 S.Ct. at 1722–23. In such cases, the Court held, immunizing the prosecutor from any inquiry into the motivation for his strikes might deprive the accused of a chance to establish that the strikes were racially motivated; a constitutional violation might therefore go unredressed. The Court consequently reversed its position in *Swain*, and held that trial judges, in deciding the merits of an accused's equal protection claim, should consider any inference of discriminatory motivation that might attend a prosecutor's exercise of his peremptory challenges.

The Court then considered the procedure that the courts should follow in addressing an accused's claim that a prosecutor is using his peremptory challenges in a discriminatory manner. The Court held that if, at the time the prosecutor's peremptory strike is questioned, the circumstances raise the inference that the strike has been made for the purpose of ridding the venire of the accused's racial peers, the trial judge must require the prosecutor to state the reason for the strike. The prosecutor, in turn, must "articulate a neutral explanation [for the peremptory challenge] related to the particular case to be tried" or abandon the strike, *id.* at 98, 106 S.Ct. at 1723; the mere denial of a discriminatory motive, or an affirmation of prosecutorial good faith in exercising individual strikes, however, does not suffice as a neutral explanation. *Id.* at 97, 106 S.Ct. at 1723. If the prosecutor makes a satisfactory explanation, "[t]he trial court then will have the duty to determine if the defendant has established purposeful discrimination." *Id.* at 98, 106 S.Ct. at 1723.

We are convinced that the appellant in this case would have a valid equal protection claim under *Batson* if this case had arisen in the criminal context.

## III.

■ To establish a violation of equal protection, a litigant must demonstrate that the state, and not a private individual, was the source of the purposeful discrimination. In the context of a criminal case, such state action is obvious, because a representative of the state—the prosecutor—is exercising the peremptory challenge. In the civil context, however, there is no prosecutor; the person utilizing the peremptory challenge is the opposing litigant—generally a non-state actor. The appellees therefore maintain that the equal protection clause is inapplicable to a civil suit. We disagree.

When blacks are excluded from jury service on account of their race, the Supreme Court has long recognized that the discriminatory actor is the trial court—even when the decision to exclude blacks may have originated in another state entity, such as the legislature. *See Strauder*, 100 U.S. at 312 ("There was error ... in [the trial court's] overruling [of Strauder's] challenge to the array of the jury, and in refusing to quash the panel."). Thus, in *Virginia v. Rives*, 100 U.S. 313, 25 L.Ed. 667 (1879), the Supreme Court noted that even though the officer charged with assembling the venire may have violated state law by excluding blacks, it should be assumed that the trial judge would redress the wrong. If not, and "the accused is deprived of the right [to have blacks on the venire], the final and practical denial will be in the judicial tribunal which tries the case, after the trial has commenced." *Id.* at 322. The Court made the same observation in *Neal v. Delaware*, 103 U.S. 370, 26 L.Ed. 567 (1880), another case in which blacks were deliberately excluded from the venire by the state officials charged with selecting venires, holding that "the court erred in overruling the motions to quash the indictment and panel of jurors," *id.* at 394, and that:

> the refusal of the State court to redress the wrong [committed by those officials charged with the selection of the venire] was a denial of a right secured to the [defendant] by the Constitution and laws of the United States. Speaking by Mr.

Justice Strong, in *Ex parte Virginia*, [100 U.S. 339, 347, 25 L.Ed. 676 (1879),] we said, and now repeat, that "a State acts by its legislative, its executive, *or its judicial authorities.*"

*Id.* at 397 (emphasis added).

Thus, until the trial judge overrules a party's objection to the racial composition of the venire, the law treats any previous decision on the part of a state entity to discriminate as harmless, insofar as the objecting party is concerned. The trial judge's decision—to proceed to trial, over the party's objection, with a jury selected from the venire on the basis of race—is the one that harms the objecting party. In overruling the objection, which informed the court that the peremptory challenger may be excluding blacks from the venire on account of their race, the judge becomes guilty of the sort of discriminatory conduct that the equal protection clause proscribes. Because the trial judge constitutes the discriminatory state actor under the equal protection clause, we conclude that there is no constitutional bar to the application of *Batson* to a civil suit.

## IV.

Having found that the equal protection clause is applicable to civil suits, we must still determine what analytical framework is applicable: that of *Swain* or *Batson*. If *Swain*, rather than *Batson*, provides the standard for an equal protection challenge in civil cases, the district court's denial of appellant's motion to disqualify the jury was correct. Appellant's proof failed to satisfy the *Swain* standard, because appellant did not establish that in other cases appellees, or their counsel, had, through the exercise of peremptory challenges, deprived their black opponents of any chance of having blacks sworn as petit jurors.

We believe, however, that the policies underlying the Supreme Court's decision in *Batson* are equally applicable in the civil context. As the Court observed in *Batson*, there are times when a party has enough peremptory challenges to remove all of his adversary's racial peers from the venire and indeed exercises them for the purpose

of obtaining a petit jury that may have a greater sympathy for him than for his adversary. This situation obviously arises in the civil context as well. Nor can we perceive any distinction in the harm to the individual's constitutional rights. Finally, we see no reason why a civil litigant would be unduly prejudiced by explaining the purpose of a strike where the circumstantial evidence indicates that he made it for a discriminatory purpose.

■ We therefore hold that *Batson* applies in civil cases. Accordingly, when the objecting party shows that "he is a member of a cognizable racial group" and that the "relevant circumstances raise an inference" that his opponent "has exercised peremptory challenges to remove from the venire members of [the objecting party's] race," the objecting party has made out a prima facie case of purposeful discrimination. *Batson*, 476 U.S. at 96, 106 S.Ct. at 1723. Once this prima facie showing is made, "the burden shifts to [the opponent] to come forward with a neutral explanation for [the challenges]." *Id.* at 97, 106 S.Ct. at 1723. The "explanation need not rise to the level justifying exercise of a challenge for cause," *id.;* rather, it need only be "a neutral explanation related to the particular case to be tried." *Id.* at 98, 106 S.Ct. at 1723.

### V.

As in the case before us, the trial judge in *Batson* did not require the prosecutor to explain why he had struck the blacks. On certiorari, the Supreme Court recognized that the relevant circumstantial evidence before the trial judge may not have been sufficient to permit the inference that the prosecutor had struck the blacks on account of their race and thus to require an explanation. The record before the Court contained only the words spoken—by the attorneys, the venire persons, and the trial judge—during the jury selection process; it

did not disclose other evidence, such as the demeanor of the venire persons and the accused during the conduct of the voir dire examination,[6] that may have had a bearing on the prosecutor's motives. The Court therefore remanded the case to the trial court with the following instruction: "If the trial court decides that the facts establish, prima facie, purposeful discrimination and the prosecutor does not come forward with a neutral explanation for his action ... petitioner's conviction [must] be reversed." *Id.* at 100, 106 S.Ct. at 1725.

■ Like the record in *Batson*, the record of the jury selection process in this case contains nothing more than the utterances of counsel, the venire persons, and the district court. Whether those utterances, in the light of other relevant evidence not revealed in the record, made out a prima facie case that appellees purposefully discriminated against the appellant by striking the blacks from the venire is a matter for the district court to decide. We therefore remand the case for further proceedings on this issue. If the district court concludes that appellees purposefully discriminated against the blacks they challenged, and appellees' counsel does not come forward with a neutral explanation for his action, the appellant must receive a new trial. As we have noted, see *supra* note 1, the court properly instructed a verdict in favor of the appellee Dykes; accordingly, if a new trial is granted, it shall be against the appellee Tiller only.

### VI.

The judgment of the district court is affirmed as to the appellee Dykes. As to the appellee Tiller, the case is remanded for further proceedings consistent with this opinion.

AFFIRMED IN PART; REMANDED IN PART.

---

6. The transcript of the voir dire examination of the venire does not usually disclose such things as the accused's eye contact with members of the venire and their expressions in response. These are matters the attorneys often take into account in exercising their peremptory challenges. They are also matters the trial judge may consider in deciding whether the accused—or, in this case, a civil litigant—has made out a prima facie case, under *Batson*, of purposeful discrimination in his adversary's exercise of a peremptory challenge.