[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
ARTICULATION AND MEMORANDUM OF DECISION RE: JURY SELECTION CHALLENGE
Elisabeth F. S. Solomon (plaintiff) sued Hall-Brooke Foundation, its trustees and its attorney in several actions, all of which emanated from her termination as Executive Director and Trustee of Hall-Brooke.
After defendants peremptorily excused the first Black venireperson, plaintiff moved that defendants state nonracial reasons for the challenge. The court did not order the defendants to explain the challenge, but thereafter advised them to keep notes on the reasons for using peremptory challenges against Black and Hispanic surnamed venirepersons. Defendants denied any racial motivation in the challenge and stated that they were seeking jurors who fit their "juror profile."
Defendants further argued that the requirement that nonracial reasons be given when a Black venireperson is removed applies only in criminal cases, and even then, only when the CT Page 328 defendant is of the same (minority) race as the excused venireperson. They claimed that where the cases are all civil and the parties, attorneys and witnesses are all white, there is no requirement that such challenges be justified or explained.
RACIALLY MOTIVATED PEREMPTORY CHALLENGES
Arbitrarily striking black people from jury service by peremptory challenge is a practice which quickly developed after other discriminatory jury barriers against black people fell by court or legislative action.
The United States Supreme Court first addressed the question whether a prosecutor's use of peremptory strikes against black people violated the federal constitution's equal protection clause in Swain v. Alabama, 380 U.S. 202 (1965). Justice White paid deference to the long tradition of the peremptory challenge and the court ruled that the prosecutor did not have to explain his use of the challenge. Recognizing that the challenge could be used in a racially discriminatory fashion, the court left the door open for future claims. The court stated that if a pattern of racial strikes over a period of time in a number of cases were shown, there would be a violation of the equal protection clause.
Batson v. Kentucky, 476 U.S. 79 (1986), made a dramatic change in the law. The court eliminated the need to show a history of racial strikes in order to contest a prosecutor's removal of a black venireperson. Batson squarely held that the equal protection clause of the United States Constitution forbids any peremptory strike solely on the basis of race. To mount a Batson challenge, the defendant had to show that:
1. He was a member of a cognizable racial group.
2. The prosecutor used a peremptory challenge to remove someone of his racial group.
3. The removal(s) of such venireperson(s) and any other relevant circumstances raised an inference of racial exclusion.
Once defendant had made this showing, the burden shifted to the state to come forward with a "neutral explanation for I challenging black jurors." Batson, p. 96-97.
At the time this court denied plaintiff's motions, the United States Supreme Court had not decided whether Batson applied to civil cases or in cases where the challenging CT Page 329 litigant was not of the same race as the struck venireperson. The District Court of Connecticut had addressed the applicability of Batson in civil cases in two decisions. The first, Esposito v. Buonome, 642 F. Sup. 760 (D.Conn. 1986), involved private litigants in a civil rights dispute. During jury selection, defendant exercised two of his peremptory challenges to exclude the only two Black members of the twelve person panel. The court was not persuaded by plaintiff's argument that Batson applied to that civil case. The Esposito court distinguished Batson from the case before it in two ways: (1), Batson involved a criminal proceeding; and (2), the complaining party in Batson was a criminal defendant, presumably haled into court against his will, whereas the complaining party in a civil case had chosen of his own free will to initiate a judicial proceeding,
In Clark v. City of Bridgeport, 645 F. Sup. 890 (1986) Judge Daley found that Batson applies to civil cases in which there has been state action. At page 895 the court said:
 "It appears, at least from the cases, that when protection from discrimination in the jury selection process has been sought by an individual party, he almost invariably has been a criminal defendant. That factor, however, does not foreclose the application of Batson, and the constitutional mandate for equal protection in civil cases where, as here, there is state action involved in the exercise of peremptory challenges." In a footnote the court distinguished its holding from
Esposito because the plaintiff there was neither a member of a cognizable group that was victimized by the alleged discrimination, nor was the burden with regard to a prima facia case met by the plaintiff. Id. at 895, fn. 5.
Williams v. Coppola, 41 Conn. Sup. 48 (1986) is a Connecticut case which addressed the use of race based peremptory challenges in civil litigation. Williams, a Black person, sought to set aside a jury verdict in favor of defendant because defendant used his three peremptory challenges to remove every Black venireperson from the two jury panels. Williams claimed violations of the equal protection clauses of the Connecticut Constitution. He also claimed a violation of the equal protection clause of the United States Constitution. The court found that plaintiff's right to a trial by jury had been violated but declined to review the plaintiff's remaining constitutional claims. CT Page 330
In dicta, the court noted that plaintiff had made a strong showing that her state and equal protection rights had been violated and cited Clark v. City of Bridgeport, supra, for support. The court then stated in a footnote that it was aware of the threshold problem of state action and opined that this is satisfied "when the court implicitedly puts its stamp of approval on a practice by allowing it to occur in the courtroom." Id. at 49, fn. 2.
The 11th Circuit had occasion to consider Batson in a civil setting in the case of Fludd v. Dykes, 863 F.2d 822
(1989). The court found that Batson applied in a civil setting even where the two parties are private litigants. In doing so, the court held that a judge becomes a state actor for purpose of an equal protection violation by overruling a party's objection to the racial composition of the venire. Id. at 828. "In overruling the objections which informed the court that the peremptory challenger may be excluding Blacks from the venire on account of their race, the judge becomes guilty of the sort of discriminatory conduct that the equal protection clause proscribes." Id. at 828. Thus the court concluded that because the trial judge constitutes the discriminatory state actor under the equal protection clause, there is no constitutional bar to the application of Batson to a civil suit.
In Reynolds v. City of Little Rock, 893 F.2d 1004,1008 (1990), the 8th Circuit read Batson as a rule of nondiscrimination which applies only to government actors without distinguishing between criminal and civil proceedings. The court refused to express a view on whether the action of the court alone, in a case involving no governmental litigants, can supply the necessary element of government action. Id. at 1008, fn. 2.
In Maloney v. Washington, 690 F. Sup. 687 (N.D.Ill. 1988) the court held that Batson applies with equal force and effect to jury selection in civil cases and to all the parties in those cases whether state actors or not. In Maloney four white police officers sued in a reverse discrimination suit against the newly elected administration of the City of Chicago. There was a mistrial in the first case after two weeks. After the second voir dire, the court refused to impanel the jury because it concluded that the selection process had been tainted by plaintiff's use of their peremptory challenges. The 7th Circuit granted plaintiff's writ of mandamus and directed the district court judge to proceed before the already impaneled jury. Maloney v. Plunkett, 854 F.2d 152 (1988). In vacating the trial judge's order, the court refused to rule on the applicability of Batson. CT Page 331
Based on the law as it stood at the time, the court denied plaintiff's request for Batson proceedings for two reasons. First plaintiff was not of the same race as the Black venireperson, nor did she claim to be Hispanic. Second, the Supreme Court had not then decided whether Batson applied to civil cases.
Jury selection took almost six months. Four hundred seventy-seven venirepersons were summoned to the courtroom, and defendants exhausted their forty-four challenges. Six jurors and six alternates were selected for a trial which was expected to (and did in fact) take several months. One juror and one alternate were Black. No Hispanic surnamed persons were selected.
After jury selection was completed, the defendants put their juror profile on the record. They were seeking jurors with the following attributes and backgrounds:
a. well-educated;
b. sensible;
c. good attitude;
d. smart;
e. stable work histories preferably with some supervisory experience;
f. experience with formal corporate structures, preferably familiar with the function of boards of directors;
g. some experience or respect for institutions, institutional values and how institutions function,
h. some volunteer work experience, especially on boards of nonprofit corporations;
i. positive experiences with attorneys;
j. no bad feelings toward attorneys or psychiatrists;
k. never been fired and had no friends or family members who had been fired;
l. not too union oriented,
m. not wedded to certain firing procedures; CT Page 332
n. familiar with at-will employment;
o. worldly, with an understanding of how a board of trustees would function;
p. not knowledgeable about about Hall-Brooke (at least one defendant on the defamation case wanted to eliminate anyone who had ever heard about the Hall-Brooke Foundation).
The court did not ask for a race neutral explanation as to each excused Black or Hispanic surnamed venireperson and denied the plaintiff's motion to impanel those excluded venirepersons or strike the chosen jurors and start anew.
After the jury was selected, the United States Supreme Court decided two cases expanding Batson's application. The first case was Powers v. Ohio, No. 89-5011, 4/1/91, which held that a defendant may contest race-based peremptory challenges of a potential juror under the equal protection clause regardless of whether the defendant and the excluded person are of the same race. This eliminated any question of plaintiff Solomon's standing to raise a Batson challenge because she is white. The second case was Edmonson v. Leesville Concrete Co, No. 89-7743, 67/3/91, which held that, under the equal protection clause of the United States Constitution, the Batson procedure applies in a civil case between private litigants.
POST EDMONSON PROCEDURE
After the Edmonson decision, the court ordered a hearing at which the defendants were required to put their claimed neutral reasons for the exclusion of the sixteen Black and four Hispanic surnamed venirepersons on the record.
Defendants' exhibit one is a summary of their notes on the jurors and alternates selected. The court sat through the extensive questioning of each venireperson, and this exhibit presents an accurate recitation of the background of each of the jurors and alternates.[1]
1. MARY FRANCES MAHONEY: Age 20, works at store, was at college full time two years. Now goes to school at night in special ed, has completed one year at SCSU. Father is Executive Director of Catholic Charities. Has done lots of volunteer work — worked at home for unwed mothers. In college, raised money for charities. Mother is a foster mother, has done much volunteer work.
2. PATRICIA KUNKEL:[2] Age 29, one year college, works in relocation for Prudential — deals with corporate clients. CT Page 333 One of her stepsons was in therapy, and she felt he got the help he needed — positive feelings about therapy. Has had dealings with lawyers at work because transactions often involve lawyers. Has no preconceptions about fair termination methods — it depends on the circumstances. Brother is a recovering alcoholic. Has friends who are corporate officers. Has no expection of job security regardless of performance. Because of her job, she understands that jobs can be transitory — if you are transferred, or you do not like the price offered for your house, or there are other problems, you can lose your job.
3. KATHERINE STAPLETON: Age 21, 14 years education, secretary at Donnelly Marketing. Related to Attorney Walter Flanagan. Majored in economics and finance (dropped out because she ran out of money, hopes to go back).
4. DOLORES BELCHER (BLACK):[3] Age 41, thirteen years education, going to Mary Mount College on weekends for business degree. Banker at People's Bank. Sat on jury before. Husband is a substance abuse counselor. Has volunteered for Bridgeport Business Regional Counsel as a mentor. Treasurer of her church. Has had some supervisory experience, but never involved with a firing.
5. ALEX MURRAY: Age 68, 16 years education, retired banker with People's Bank. Wife retired from Stratford Board of Education (secretary). Active in church, member of Board of Trustees. Was treasurer of church for 25 years, now trustee for another church for past three years. Thinks some jury verdicts are pretty high (but no artificial ceiling).
6. CHARLES LUCHUN: Age 49, seventeen plus years education, engineering manager, Textron Lycoming. Wife secretary at Catholic Family Services. Supervises other engineers — hiring and firing, but has never had to fire anyone. Ten years ago was treated for depression. His kids had motivational problems also. Has been involved with attorneys in product liability litigation for Textron. Has volunteered at Sterling House in Stratford, Little League, church. No preconceptions about firing procedure, just needs to be done fairly.
7. STEPHEN SHUCK: Age 37, 15 years education, police sergeant, Bridgeport. Had been educated in environmental biology, worked for DuPont, became a police officer for financial reasons. Was party to a case involving a car accident where the City Attorney represented him, and paid money which Shuck thinks should not have been paid, making CT Page 334 policemen and City look bad inappropriately.
8. ROBERT CARLSON: Age 58, postal service worker, retired 13 years ago, 12th grade education. Was supervisor, evaluated people in post office. Recognizes that job protections as in the post office are not always available in the private sector and would not impose the post office procedures on Hall-Brooke. Saw psychiatrist for problems in the 1950's, thought it was very helpful.
9. CHARLES HARE (BLACK): Age 41, 17 plus years education, teacher (social studies). Has used attorneys in connection with real estate investments and difficulties paying his mortgage. Served as First Vice President, NAACP and on Board of Directors of another volunteer organization where he had involvement in policy making.
10. KENNETH WRIGHT: Age 43, Southern New England Telephone installer, 12th grade education. Son-in-law is an attorney, Dan Cotter of Cotter, Cotter Sohen (which does legal malpractice defense work) and he has very high regard for his son-in-law.
11. SANDRA DOUGLAS:[4] Age 55, 12th grade education, legal secretary. Husband is a data processor at Bridgeport Hydraulic. Works for law offices of Frank Riccio. Reads a lot. Worked for a chemical company where no one ever got fired.
12. NANCY STANLEY: Age 59, 12th grade education. Asked to be excused because she is working on administering her mother's estate. Works part time as a clerk in the I Trumbull Recreation Department. Husband is an engineer at Textron. Member Board of Trustees of her church some years ago, dealt with decisions such as repairing roof, new signs.
CHALLENGE EXPLANATIONS AND COURT FINDINGS
The following are the reasons defense counsel put on the record for their peremptory challenges of the Hispanic surnamed jurors and the court's finding as to each:
JACQUELINE DeJESUS
Her lack of a high school education, lack of work experience, and complete unfamiliarity with the functions of a corporate officer were sufficient, neutral reasons to support a peremptory challenge. CT Page 335
LISETTE COLON
She had one year of college and worked for the General Counsel's office in a corporation. She had no supervisory work and had a 21 year old brother who did not work. Her company has a warning system before firing and she said she could set aside her feelings about her own work in the personnel department. She did not seem strong enough. Attorney Moger emphasized the warning system that was in place at Norden under which she worked which was not the system in place at Hall-Brooke for Mrs. Solomon.
FINDINGS
She worked for a company which had a warning system before firing. Although she said that she could set her feelings about that procedure aside, defendants' feeling that she was not strong enough was a sufficient, neutral reason.
HECTOR MUNIZ
He had a ninth grade education and was unemployed from 1980 to 1983. He has been disabled the past three years, and was receiving worker's compensation. He believed that a warning procedure is fair. He personally had three warnings before being fired. He identified with workers and felt that the system owed them something.
FINDINGS
Mr. Muniz had only a ninth grade education, well below the educational level of the jurors selected and the jury profile. His unemployment for several years, previous firing j and belief in a warning system justified the challenge.
SAMUEL DIAZ
He had a 12th grade education and believed that employees should have a second chance before being fired. He could not think of a situation where a warning was not necessary and he was a union member at his own option.
FINDINGS
His belief that employees should have a second chance before firing and statement that he could not think of a situation where a warning was not necessary before firing warranted the use of a peremptory challenge.
Defendants placed on the record the following reasons CT Page 336 for excluding Black venirepersons. The court's finding follows as to each.
CHERYL WADE
This venireperson asked to be excused as she was a postal worker who was very concerned with losing out on "bid" jobs even though she would get paid for the time she would serve on the jury. She had no supervisory experience, no community activities and was a union member. She stated she would probably feel sorry for the plaintiff and had experience as part of a union grievance panel.
FINDINGS
She was very concerned about missing out on job opportunities which might be posted while she served as a juror. Her lack of volunteer activities, her experience on a union grievance panel and her probable sympathetic feelings toward plaintiff were sufficient reasons for defendants to excuse her.
KELLY GRANGER
She worked for Connecticut Limousine and had previously done hairstyling. She had a brother in jail and believed there was something to the plaintiff's case simply because of the claims being made. Her uncle had a case like the plaintiff's and she would be suspicious of a charity unless the charity was truthful. A challenge for cause was denied by the court.
FINDINGS
She had suspicions about charities and indicated at one point that there was something to the case because of the claims alone. Her uncle's case was a legitimate concern. The challenge was proper.
FRANCES UPCHURCH
She had two children in jail and would probably lose money by serving. She had no experience with corporations, had never worked in a supervisory capacity and had had no involvement with nonprofit organizations.
FINDINGS
The reasons given by defendants for excusing her were sufficient. She had none of the attributes of the juror profile and expected to lose money if she served. That prospect could CT Page 337 well have distracted her and caused resentment.
CLARISE BROWER
She appeared to have a problem following directions. She had no employment history and had only worked three years in the last thirty. She renders decisions too quickly, and a close friend had worked at Hall-Brooke. She had serious health problems, including diabetes.
FINDINGS
She had a close friend who worked at Hall-Brooke and she had serious health problems, including diabetes. The challenge was properly exercised.
ELENE CROSBY
She was age 49 and was a school teacher with 17 years of education. She appeared nervous and was a defendant in a lawsuit. She assumed there was merit to the plaintiff's claim and was a union member. She appeared reluctant to answer the question whether she could let the plaintiff go out of court with nothing if the case was not proven. She stated that she preferred not to sit, and she found it difficult to stand alone in her opinion against others. She seemed to react favorably to the plaintiff's attorney who knew about her husband's barber shop. She refused to say if she could be fair in a wrongful interference case and did not seem to understand the burden of proof.
FINDINGS
Ms. Crosby was well educated but that was counterbalanced by her union membership, preference not to sit and reluctance to state that she could send the plaintiff out of court with no money. The challenge was proper.
TOMISHA LOMAX
She had some college education and was a teller at a bank. She sticks to her opinion no matter what and did not read the witness list presented to all the venirepersons to see if they knew anyone on the list. She had no volunteer or supervisory experience and a close friend of hers had been fired from a job. She speaks ungrammatically and struggles with the questions. She does not read the newspaper. Her attention span is weak. At this point three females are on the jury. Her employer had a warning system before firing that she thought was fair and she felt that warnings were needed before firing. CT Page 338
FINDINGS
She had a close friend who had been fired, and she felt strongly that warnings are needed before a person is fired. She had some college but no other attributes defendants sought in a juror. The reasons given for the challenge are neutral and sufficient.
MICHAEL SIMMONS
He had a high school education and worked as a maintenance man. He had had long periods when he was unemployed and had served jail time. He felt he had not been treated fairly by the system. A challenge for cause was denied by the court.
FINDINGS
His long periods of unemployment and feeling that he had not been treated fairly in connection with a case which resulted in jail time justified the challenge.
MONICA CLARK
She had a sixth grade education, was very soft spoken, and had some friends who had been fired. She gave confused answers regarding her marital status and she had a schizophrenic daughter. She did not read newspapers or magazines.
FINDINGS
She had none of the attributes in the defendants' juror profile and some of her friends had been fired. The challenge was proper.
DEBRA JOSEY
She had a 12th grade education and could not spell very well. Her stepfather worked at Hall-Brooke while the plaintiff was Executive Director and she lives with the stepfather. She gave equivocal answers regarding feelings about attorneys and had done no volunteer work. She did not know what her husband did for a living and did not care. She had no idea what trespass or defamation meant and appeared very "flip".
FINDINGS
She lived with her stepfather who worked at Hall-Brooke while plaintiff was the Executive Director. CT Page 339 Although she had a 12th grade education, she had no idea what trespass or deprivation meant. In no way did she fit the defendants' juror profile. The reasons given are sufficient.
BERNICE HAIRSTON
She had a tenth grade education and worked as a maid at the Hilton Hotel before being fired. She was a cook at I Hall-Brooke 13 years ago during the plaintiff's tenure as, Executive Director. Her husband had been convicted of armed robbery. She believed that the defendant must have done something wrong in this case. Wrong answers were given on the questionnaire showing difficulty with forms. She thought Attorney Doyle was the defendant and had difficulty keeping the parties straight. She had strong feelings against her supervisor before she was fired. Defendants' challenge for cause was denied.
FINDINGS
She had been fired and had worked at Hall-Brooke in the past. She stated that defendants must have done something wrong. The challenge for cause was denied because she was rehabilitated, but the reasons given for excusing her are sufficient.
SHARMAN SOMERVILLE
His mother worked at Hall-Brooke for many years and he has a friend who still works at Hall-Brooke. He found it difficult to say if he could follow the law if he strongly disagreed with it. His mother was currently collecting a pension from Hall-Brooke. The judge said that the peremptory challenge was appropriate.
FINDINGS
A friend of his worked at Hall-Brooke and his mother worked there for many years and collects a pension from Hall-Brooke. The challenge was proper.
ELIZABETH CLARK
She was age 20 and had a 12th grade education. She worked at Sikorsky and had a part time job which resulted in only two and a half hours of sleep per day. She thought the defendant must have done something wrong to have brought about this lawsuit. A challenge for cause was denied.
FINDINGS CT Page 340
She initially thought defendants must have done something wrong. She had two jobs and only got two to three hours of sleep at night. She had none of the profile attributes. The challenge was proper.
ODESSA YOUNG
She had 14 years of education and knew the judge from church. She worked at Bridgeport Hospital and had been fired because of a personality conflict. She felt she had been treated unfairly.
FINDINGS
Her own firing from a job at Bridgeport Hospital feeling that she had been treated unfairly were sufficient, nonracial reasons for excusing her.
NATHANIEL VINSON
He had a 12th grade education and could not spell. He thinks his own attorney could have done a better job in a case he had and felt that his lawyer just wanted money. He was unhappy with his attorney. He would have problems with instructions to the effect that the defendant did not have to prove anything.
FINDINGS
He had an unhappy experience with a lawyer who "just wanted money." In view of the legal malpractice case, the peremptory was proper.
STAR WHITE
She had a 12th grade education and no real employment experience. She had been arrested for possession of marijuana in the past. She felt that if the plaintiff had gone to so much trouble she must have been right. The challenge for cause was denied.
FINDINGS
Although she was rehabilitated, at one point she indicated that plaintiff must have done something right because she had gone to so much trouble. She had no real employment experience and did not meet any of the juror profile characteristics. The challenge was proper. CT Page 341
JAMES McQUELLER
He was a retired maintenance mechanic with an 11th grade education. He had been president of his union for many years and had a strong belief in a warning system before firing. He said he would try to set those feelings aside to serve on the jury. It had been his job as president of the union to get jobs back for Union members. A challenge for cause was denied.
FINDINGS
His strong belief in a warning system before firing and background as a union president who worked at getting jobs back justified defendants' peremptory challenge.
The court required defendants to put their non-racial reasons on the record because of the number of Black and Hispanic surnamed venirepersons excused. Plaintiff, however, does have the ultimate burden of persuasion on her motion. Batson, supra, p. 98.
Plaintiff did not challenge the reasons given by defendants. She did not claim that they were pretextual or insufficient or demonstrate any need to examine the defense attorneys. Plaintiff's sole claim is that the peremptory challenge of sixteen Black and four Hispanic surnamed venirepersons makes out not only a prima facie case of racially motivated exclusion but a conclusive one.
Each excluded venireperson was examined extensively and asked the same questions as were asked of all other venirepersons. The questions were also designed to see how the venireperson matched (or failed to match) defendants' jury profile.
Each of the jurors selected had several of the attributes defendants sought. Plaintiff claimed that she was, in essence, wrongfully terminated without warning from her positions. Defendants wanted jurors who had never been fired and none of those selected had been fired. No juror was wedded to any particular procedure which should be followed prior to firing and none was union oriented.
One of plaintiff's cases was a legal malpractice claim against an attorney. Defendants wanted jurors with no bad feelings toward attorneys and none of those selected had any such feelings. Psychiatric testimony was going to be important to the defense. None of the jurors selected had negative feelings toward psychiatrists. Defendants wanted well educated jurors because the case presented complicated issues. Eight of CT Page 342 the ten persons selected before defendants exhausted their challenges had educations beyond high school. The two who did not have post high school educations had other attributes defendants deemed favorable.
The reasons for excusing a venireperson under the Batson procedure need not rise to the level of cause. Batson, supra, P. 97. They must be nonracial and not simply pretextual. Defendants have given sufficient, nonracial reasons for their challenges, and the court finds that they did not excuse any venirepersons because of their race or Hispanic surnames.
The motion to seat the excluded venirepersons on the jury or start jury selection anew is denied.
E. EUGENE SPEAR, JUDGE