[DO NOT  PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 04-14775
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 21, 2005
THOMAS K. KAHN
CLERK

D. C. Docket No. 03-22226-CV-JLK


LAZETTE HORNE,

                                              Plaintiff-Appellant,

                    versus

TURNER CONSTRUCTION COMPANY,
a foreign corporation,

                                              Defendant-Appellee.


_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 21, 2005)



Before ANDERSON, BLACK and KRAVITCH, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Lazette Horne appeals the district court's grant of summary judgment in favor of Defendant-Appellee Turner Construction Company ("Turner") on Horne's gender discrimination claims under Title VII of the Civil Rights Act of 1964 and the Florida Civil Rights Act. Because we find that the district court improperly discredited both direct evidence of discrimination and circumstantial evidence of pretext, we vacate the district court's ruling and remand this case for further proceedings.

I.     Facts

On Turner's motion for summary judgment the facts presented, based on deposition testimony, were as follows. Turner hired Horne as a "laborer"—an unskilled job—on a construction site at the University of Miami. Turner's employees claimed that Horne's responsibility was to do whatever she was asked, which primarily entailed cleaning up around the job site. Horne asserts that she was also asked to perform other tasks, such as using some construction equipment, digging ditches, constructing doors and fixing pipe. Horne's supervisor for most of her tenure, George Cheek, and another supervisor, Angel Cisneros, agreed that Horne did some construction work but testified that she was hired primarily to do clean-up work. Cheek said that this was partly because women were not strong enough for some construction work and did a better job at clean-up than men. A fellow

2

employee at the site, Danny Lazo, testified that Horne's performance was just as good as any of the men on the site, and that she did many other tasks besides cleaning. Lazo admitted, however, that Horne was never put to especially strenuous tasks and had no carpentry skills.

About seven months after Horne was hired Eric Valderrama was transferred to the project as its supervisor, replacing Cheek. Horne's sister, Collette Edwards, who had worked at another Turner construction site under Valderrama, testified that she had heard Valderrama saying that women could not dig or move things as quickly as men, and that he preferred to limit women's work to cleaning. Both Horne and another employee at the University of Miami construction site, Lola Daniels, testified that Cheek warned them to stay out of Valderrama's way because Valderrama did not like women.

On coming to the University of Miami site, Valderrama brought with him two skilled carpenters, Gonzalez and Ferrado, who wore tool belts and were familiar with the use of construction equipment. Ferrado was a skilled carpenter, while Gonzalez was a laborer who had some carpentry skills. After Valderrama had been at the site for about three weeks, he terminated Horne, telling her that her position had been eliminated so that he could hire more workers skilled in carpentry. Both Cheek and Valderrama testified that it was industry custom for supervisors to bring workers with

3

them to a new job site, and that this sometimes led to the termination of workers who were already employed there.

Horne filed a charge with the EEOC, which investigated her case and subseqently issued a letter determining that there was reasonable cause to believe that gender discrimimation had occurred. After attempts to reconcile the parties, the EEOC issued a right to sue letter. Horne then filed a timely complaint alleging violation of her rights under Title VII of the Civil Rights Act of 1964 and the Florida Civil Rights Act. After depositions were taken of all the witnesses discussed above, Turner moved for summary judgment.

Turner's summary judgment motion alleged, inter alia, (1) that there was no direct evidence of discrimination because any statements proffered by former employees were inadmissible hearsay, irrelevant, made without personal knowledge, and were taken out of context and (2) that Horne could not establish circumstantial evidence of discrimination because she could not produce evidence that Turner's legitimate, nondiscriminatory reasons for firing Horne—industry custom and the need for skilled workers on the site—were a pretext for discrimination. Turner also moved to exclude Edwards' and Daniels' deposition testimony about Valderrama's comments as inadmissible hearsay, irrelevant, and made without personal knowledge.

The district court granted both summary judgment and the motion to exclude Edwards' and Daniels' testimony.

Horne then moved for reconsideration, asserting that the court had failed to consider the EEOC's conclusion that there was evidence of discrimination, and attaching an affidavit in which Daniels stated that Cheek had warned Daniels that Valderrama would fire Horne because he did not want women on the site. The district court denied the motion for reconsideration, and struck the affidavit on Turner's motion. Horne then timely filed the instant appeal.

II.    Analysis

We review the district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the party opposing the motion. Wilson v. B/E Aerospace, 376 F.3d 1079, 1085 (11th Cir. 2004). Summary judgment is appropriate if the record shows that there is no genuine issue of material fact and that the moving party is therefore entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

Title VII of the Civil Rights Act of 1964 prohibits discrimination on the basis of gender. 42 U.S.C. § 2000e; McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800 (1973). As Horne's complaint also alleges a claim under the Florida Civil Rights Act, we note that such claims are analyzed in the same manner as Title VII claims. Bass v. Bd. of County Comm'ers, 256 F.3d 1095, 1105 (11th Cir. 2001). A plaintiff

5

may prove discrimination in two ways: through direct evidence, or through circumstantial evidence that creates an inference of discrimination. Bass, 256 F.3d at 1105.

*A.     Direct Evidence*

Direct evidence of discrimination is "evidence which, if believed, would prove the existence of a fact [in issue] without inference or presumption." Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir. 1990) (citation and emphasis omitted).   To constitute direct evidence of discrimination, a statement of discriminatory intent "must be made by a person involved in the challenged decision." Trotter v. Bd. of Trustees, 91 F.3d 1449, 1453-54 (11th Cir. 1996).  In a case where the plaintiff proffers direct evidence of discrimination, "the trial judge must initially make a credibility finding as to whether or not plaintiff's proffered direct evidence of discrimination is to be believed." Haynes v. W.C. Caye & Co., 52 F.3d 928, 931 (11th Cir. 1995) (citation omitted).

We have found direct evidence where "actions or statements of an employer reflect[] a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." Caban-Wheeler, 904 F.2d at 1555.  In gender discrimination cases, we have held all of the following statements to be direct evidence: "a woman was not competent enough to do this job," Haynes, 52 F.3d at

6

930; "no woman would be named to a B scheduled job," <u>Burns v. Gadsden State Community College</u>, 908 F.2d 1512, 1518 (11th Cir. 1990); "we can't have women in management," <u>Sennello v. Reserve Life Ins. Co.</u>, 872 F.2d 393, 394, 395 (11th Cir. 1989).

In the case at bar, Horne and Daniels both testified that Cheek, an employee of Turner, told them that Valderrama had said he disliked women on the job site, and that Valderrama would fire Horne because she is a woman. Although credibility determinations are normally left to the factfinder, our precedent explaining the meaning of direct evidence in the discrimination context requires the conclusion that the district court erred. The plaintiff's proffered evidence of Cheek's statements is sufficient to establish direct evidence of discrimination and therefore to withstand a motion for summary judgment.

The EEOC's finding that there was reasonable cause to believe that discrimination occurred bolsters our conclusion. We previously have held that such an EEOC finding is admissible evidence in a bench trial, and the district court should have taken it into consideration in this summary judgment proceeding as well. <u>Barfield v. Orange County</u>, 911 F.2d 644, 650 (11th Cir. 1990). The district court erred in failing to do so.

7

Furthermore, Turner's claim that the statements upon which Horne relies are inadmissible hearsay fails. Although Valderrama's statements to Cheek and Cheek's subsequent statements to Horne and Daniels appear to fall within the definition of hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted," Fed. R. Evid. 801(c), both levels of statements fall within the hearsay exclusion for statements made "by [a] party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship," which are deemed admissions by a party opponent. Fed. R. Evid. 801(d)(2)(D). On this basis, we have held previously that statements made by a supervisor who has a role in the decision-making process are generally admissible. See, e.g., Miles v. M.N.C. Corp., 750 F.2d 867, 873-75 (11th Cir. 1985). Both Cheek and Valderrama were superintendents with authority to hire and fire employees on the construction site, and their statements were therefore made within the scope of their authority.

### B.     *Circumstantial Evidence*

*Courts use a burden-shifting analysis to evaluate discrimination claims based* on circumstantial evidence, first described in McDonnell Douglas, 411 U.S. 792. The plaintiff must first establish a prima facie case of discrimination, which Turner concedes that Horne did for purposes of this appeal. The burden of production then

8

shifts to the employer to show a legitimate, non-discriminatory reason for the employer's actions. McDonnell Douglas, 411 U.S. at 802-04, 807. If the employer does so, the final burden of proof then rests with the plaintiff, who must then show that the employer's reason was a mere pretext for discrimination. Id. If the plaintiff fails to offer sufficient evidence of pretext, the employer is entitled to summary judgment in its favor. Chapman v. AI Transport, 229 F.3d 1012, 1025 n.11 (11th Cir. 2000) (en banc). The court must evaluate whether the plaintiff demonstrated "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997).

In the present case, Horne, Daniels, and Lazo testified that Horne's duties on the job site consisted of more than just cleaning. Lazo stated that Horne had worked with him, that she did her job as well as any of the men on the site, and that she had assisted him with putting up fencing, digging holes, spreading soil, raking, fixing pipes, constructing doors, mixing cement, and using a drill. On the other hand, Valderrama testified that Horne lacked the qualifications to do the work he needed of a laborer, and brought in a laborer with some carpentry skills from another site to replace her. Several other Turner employees expressed their personal opinions that

women had a limited role on a construction site, and that they would not ask women to do certain tasks. A number of witnesses testified that Valderrama had made statements questioning women's abilities. Furthermore, Turner employees Cisneros, Lazo, and Cheek all testified that women should not do strenuous work and that women are better suited for cleaning work. Evidence of their attitudes is probative of pretext, though it cannot serve as direct evidence. The discrepancy between the testimony of Horne, Daniels, and Lazo and that of Valderrama as to Horne's qualifications creates a genuine issue of material fact sufficient to preclude summary judgment in light of the other evidence of possible pretext.

We note that "nepotism" is permitted under Title VIII. See Platner v. Cash & Thomas Contractors, Inc., 908 F.2d 902, 905 (11th Cir. 1990). In the present case, however, Valderrama testified that he would not have replaced an employee with a worker from another site if the employee was qualified and able to do the work required. This cuts against Turner's argument that it was industry custom to bring employees from a superintendent's previous job site.

For the foregoing reasons, we VACATE the district court's ruling and REMAND for further proceedings consistent with this opinion.

10