[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 27, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-15974
Non-Argument Calendar

_____

D. C. Docket No. 03-01740-CV-RRA-W

LARRY KINCAID,

Plaintiff-Appellant,

versus

BOARD OF TRUSTEES, STILLMAN
COLLEGE,
ERNEST MCNEALEY DR,

Defendants,

STILLMAN COLLEGE,
an Alabama Corporation,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(June 27, 2006)**

Before BLACK, BARKETT and KRAVITCH, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Larry Kincaid appeals the magistrate judge's grant of summary judgment in favor of Defendant-Appellee Stillman College ("Stillman") in his employment discrimination suit. For the reasons that follow, we affirm.

## I. Background

Kincaid, a sixty-six year-old white male, worked for Stillman, a private, historically black college, from January 1989 until August 2000 as a staff member, co-op coordinator, and counselor.[1] During the final year of his employment, Kincaid was transferred to the Division of Corporate Relations under the supervision of Dr. Rodell Lawrence.[2] Shortly after Kincaid's transfer, Lawrence instituted some policy changes, including assigning Kincaid to work on a project that required him to obtain resumes from all college seniors. Kincaid failed to complete the project as requested. Additionally, Kincaid failed to submit his progress reports in the management by fact ("MBF") format as Lawrence

---

[1] During the majority of his time at Stillman, Kincaid taught a course required for all Stillman freshmen and for which the students received two hours of academic credit. Stillman classified Kincaid as a staff member, and Kincaid conceded in his deposition that he was a staff member.

[2] Kincaid's declaration states that he was the only white employee when he worked in the Division of Student Affairs from 1989-1999 and when he worked in the Division of Corporate Relations from 1999-2000. His last two supervisors, Lawrence and Jacqueline Currie, and all college administrators discussed in this opinion are black.

requested; Kincaid stated that he was unsure how to translate his daily activities to that format. Finally, although Lawrence requested that all employees attend a demonstration to learn the Gooey Industries Resume Job Placement software system, Kincaid did not attend. In a June 28, 2000 e-mail, Lawrence reminded Kincaid of the MBF and Gooey Industries requirements, but Kincaid failed to provide his progress reports in MBF format in a timely manner and never learned the Gooey Industries software.

In Kincaid's mid-year evaluation for the 1999-2000 school year, Lawrence scored Kincaid lowest in productivity, reliability, and timeliness, and gave him an overall score of 3 out of 5, where 5 was "very poor." As for one of Kincaid's major duty areas – to "develop the RESUME BOOK for the institution each fall. Develop, implement, and evaluate programs, workshops and career development related for students" – Kincaid received a 4. According to Kincaid, his performance was exceptional; he filed a grievance but was not given a hearing. In an evaluation at the end of the 1999-2000 school year, Lawrence scored Kincaid 3 out of 5 overall and noted that "Mr. Kincaid is a hard worker but he need [sic] to become proficient in the use of computers. He also need [sic] to provide monthly progress reports in a timely and accurate manner." He received a 3 in the major duty of area of "develop[ing] resume book for seniors and external program

3

hopefuls so that students get hands-on experience in professional areas."[3]

Approximately six weeks after the year-end evaluation, Lawrence informed Kincaid that his contract would not be renewed and that his employment would be terminated as of August 31, 2000. Lawrence's letter to Kincaid noted that "we have discussed your job performance and you have been given ample time for improvement. To date your performance has not improved and as a result your employment at Stillman College has been terminated."

Kincaid timely filed a charge of age and race discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). The EEOC issued a right-to-sue letter and determined that a violation had occurred, stating:

> I have determined that Respondent discriminated against Charging Party with respect to subjecting him to a hostile work environment and non-renewal of his employment contract because of his race, White, and age, over 40, in violation of Title VII of the Civil Rights Act of 1964, as amended and the Age Discrimination in Employment Act of 1967. Like and related to the above, I have determined that Respondent discriminated against White employees, who were over the age of forty (40), with

---

[3] Although Kincaid's supervisors seem to have evaluated him well for most of his time at Stillman, Kincaid's evaluations began to decline in 1996. In his 1996-97 evaluation, his supervisor, Jacqueline Currie, gave him a 28.5 out of 40, which placed Kincaid near the bottom of the "good" category. In his 1997-98 evaluation, Currie gave him a 22.5 out of 40, which placed him in the "satisfactory" category. In neither evaluation did Kincaid receive an "excellent" score in any area. The 1997-98 evaluation and a spring 1999 evaluation both noted that Kincaid needed to improve his computer skills. Kincaid alleges that his declining evaluations corresponded with Stillman administrators' policies to hire more young, black faculty members.

4

respect to non-renewal of employment contracts because of age and race.

Kincaid then filed suit against Stillman alleging that the college discriminated against him based on his age and race in violation of Alabama and federal law, created a hostile work environment in violation of federal law, breached his contract in violation of Alabama law, and violated a state law proscription on negligent or wanton retention, training, and/or supervision. Kincaid attached the EEOC charge of discrimination, the right-to-sue letter, and the EEOC's determination to his complaint.[4] The parties consented to the exercise of dispositive jurisdiction by a magistrate judge. 28 U.S.C. § 636(c).

Stillman moved for summary judgment, asserting that: (1) Kincaid failed to establish a prima facie case of discrimination and lacked direct evidence of discrimination in any statements allegedly made by Stillman employees; (2) Kincaid was terminated for poor job performance, which was a legitimate, non-discriminatory reason ("LNDR"); (3) Kincaid could not show that the LNDR was pretext for discrimination; and (4) there were no meritorious state law claims. Stillman attached Kincaid's evaluations completed by Lawrence and other evaluations completed by Jacqueline Currie, Kincaid's supervisor from 1996-1999.

---

[4] The magistrate judge initially ruled that the EEOC determination was inadmissible, but after a further review of our precedent, the magistrate judge properly ruled that the EEOC determination was admissible. Barfield v. Orange County, 911 F.2d 644, 649 (11th Cir. 1990).

Stillman also submitted affidavits from Lawrence, Currie, and College President Dr. Ernest McNealey. Lawrence stated that he was the sole decisionmaker and terminated Kincaid because of his poor job performance. Currie and McNealey each explained that she or he was not involved in the decision.

In his response, Kincaid claimed that he had direct evidence of discrimination in the form of statements from McNealey, Lawrence's supervisor, in which McNealey allegedly told a group of assembled faculty and staff members that it was his goal to make the faculty more like the student body, predominantly young and black.[5] Kincaid also pointed to a policy announced by College Vice President Dr. James Mackin, which required at least two out of three finalists for faculty positions to be black. Kincaid submitted declarations from several Stillman employees who noted similar statements from McNealey and Mackin. According to Kincaid, younger, black employees took over his duties after he left.

---

[5] Kincaid alleged that McNealey said that he wanted "faculty more the age, and I forget how he put that, and appearance of the students or something like that . . . . Closer to the age of the students and that they appear, in other words, that they needed fewer white faculty and more minority faculty." In his deposition, however, Kincaid stated that McNealey did not make the statement "that way," but that "that's the way" he and other co-workers talked about it. Kincaid stated that he attended the meeting but "can't remember precisely hearing" the alleged statement.

Kincaid also alleged that a professor told him that several students told the professor that McNealey said that the "faculty would look more like the students in terms of race and age." Another former Stillman employee also supposedly told Kincaid that when Lawrence asked "several of Dr. McNealey's higher echelon guys" about Kincaid's suit, one stated, "[w]hy that short, white, little, mother fucker will never get a dime from Stillman College." Finally, Kincaid stated that Lawrence "more or less" told him that McNealey "wanted a complete turnover of faculty," but Kincaid conceded that Lawrence did not mention age or race.

Stillman moved to strike certain statements from the declarations, including one from Brenda Jennings Carter, in which she stated that she overheard a conversation between Currie, Lawrence, and Dr. Sharon Whittaker, Vice President of Student Affairs. Carter stated: "According to Ms. Currie, Dr. Whittaker and Dr. Lawrence, Stillman officials had already decided to terminate Mr. Kincaid prior to his transfer to work for Dr. Lawrence . . . . According to what I heard Ms. Currie, Dr. Whittaker and Dr. Lawrence say, Mr. Kincaid's termination had been planned for some time prior to his transfer and both Ms. Currie and Dr. Whittaker were very determined that Mr. Kincaid should be terminated." The magistrate judge granted Stillman's motion to strike, concluding that the statements were conclusory and unsupported by specific facts.

The magistrate judge granted Stillman's motion for summary judgment, concluding that Kincaid lacked direct evidence and evidence of pretext. The magistrate judge further noted that McNealey's alleged policy did not apply to terminations, but rather to new hires, McNealey had not made the decision, and there was no evidence that Lawrence was aware of McNealey's statements.

Kincaid now appeals.[6]

---

[6] Kincaid admits that he does not challenge the magistrate judge's rulings on any state law issues or on his hostile work environment claim. Therefore, those claims are abandoned. Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc., 162 F.3d 1290, 1308 n.43 (11th Cir. 1998).

## II. Standard of Review

We review the grant of summary judgment <u>de novo</u>, viewing the evidence in the light most favorable to the non-moving party. <u>Wilson v. B/E Aerospace, Inc.</u>, 376 F.3d 1079, 1085 (11th Cir. 2004). We must grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Once the party seeking summary judgment meets its burden of showing the absence of a genuine issue of material fact, the burden shifts to the non-moving party to submit sufficient evidence to rebut the showing with affidavits or other relevant and admissible evidence. <u>Avirgan v. Hull</u>, 932 F.2d 1572, 1577 (11th Cir. 1991).

We review discovery rulings for abuse of discretion. <u>Cliff v. Payco Gen. Am. Credits, Inc.</u>, 363 F.3d 1113, 1121 (11th Cir. 2004).

## III. Discussion

Kincaid challenges the magistrate judge's grant of summary judgment in favor of Stillman and focuses on three alleged errors: (1) the magistrate judge's decision not to consider certain statements from Stillman officials as direct

8

evidence of discrimination; (2) the magistrate judge's failure to give weight to the

EEOC determination; and (3) the magistrate judge's decision to strike Carter's

declaration.

1.      Whether Kincaid Presented Direct Evidence of Discrimination

First, Kincaid contends that the magistrate judge erred in concluding that the

statements from Stillman officials were not direct evidence of discrimination.  A

plaintiff claiming racial or age discrimination can prove his case through direct or

circumstantial evidence.[7]  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800

(1973).  If he relies on circumstantial evidence, the district court applies the

familiar McDonnell Douglas burden shifting framework, and the defendant can

rebut an inference of discrimination raised by the plaintiff's prima facie case by

raising LNDRs that the plaintiff must then prove are pretext for discrimination.

McDonnell Douglas, 411 U.S. at 802-04, 807; Smith v. J. Smith Lanier & Co., 352

F.3d 1342, 1344 (11th Cir. 2003).  If the plaintiff proves through direct evidence

that an illegal motive was a significant or substantial factor in an employment

---

[7] Title VII prohibits racial discrimination in employment.  42 U.S.C. § 2000e.  The Age Discrimination in Employment Act ("ADEA") makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age."  29 U.S.C. § 623(a)(1).  Under the ADEA, "the plaintiff's age must have actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome."  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141 (2000).

decision, however, the defendant can rebut the inference of discrimination "only by proving by a preponderance of the evidence that the same decision would have been reached even absent the presence of that factor." Lee v. Russell County Bd. of Educ., 684 F.2d 769, 774 (11th Cir. 1982) (citing Mt. Healthy City Sch. Dist. v. Doyle, 429 U.S. 274 (1977)).

Direct evidence of discrimination is "evidence which, if believed, would prove the existence of a fact [at issue] without inference or presumption." EEOC v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1272 (11th Cir. 2002). When determining whether a statement is direct evidence of discrimination, we consider timing and whether the person making the statement was a decisionmaker. Scott v. Suncoast Beverage Sales, Ltd., 295 F.3d 1223, 1227-28 (11th Cir. 2002); Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998) ("[R]emarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination.").

Here, McNealey's and Mackin's statements did not constitute direct evidence of discrimination. Even though Kincaid contends that McNealey's statements may have influenced Lawrence and other subordinates to adopt discriminatory policies, he has not presented any supporting evidence that McNealey was a decisionmaker in his termination. Because Lawrence was the sole

decisionmaker, statements from other Stillman officials did not constitute direct evidence of discrimination.  Bass v. Bd. of County Comm'rs. of Orange County, Fla., 256 F.3d 1095, 1107 (11th Cir. 2001) (citing Standard, 161 F.3d at 1330).

Analyzing Kincaid's claim under the McDonnell Douglas framework, we conclude that the magistrate judge properly granted summary judgment for Stillman.  Assuming, as the magistrate judge did, that Kincaid established a prima facie case, Kincaid nevertheless failed to show that Stillman's LNDRs were pretext for discrimination.  The evidence showed that Kincaid failed to follow instructions, submit progress reports in the proper format, complete Gooey Industries training, complete other assignments, and enhance his computer skills.

To show pretext, Kincaid must "demonstrate that the proffered reason was not the true reason for the employment decision . . . .  [The plaintiff] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."  Jackson v. Ala. State Tenure Comm., 405 F.3d 1276, 1289 (11th Cir. 2005) (citation omitted).  "Conclusory allegations of discrimination, without more, are insufficient to raise an inference of pretext."  Isenbergh v. Knight-Ridder Newspaper Sales, Inc., 97 F.3d 436, 444 (11th Cir. 1996).

Here, Kincaid asserts that he was transferred to Lawrence's supervision as part of a plan to terminate him and that Lawrence gave him poor evaluations to justify dismissal. These conclusory allegations lack evidentiary support, however, and do not raise an inference of pretext. Kincaid received declining evaluations before his transfer to Lawrence's division, and Currie, his previous supervisor, repeatedly noted his need to increase proficiency with computers.

Additionally, McNealey's and Mackin's statements are not evidence of pretext. Lawrence confirmed that he was the sole decisionmaker and did not make his decision based on race or age. Kincaid's contract informed him that its renewal was contingent upon satisfactory evaluations; Kincaid received low assessments in key areas of his position. Furthermore, we doubt whether the statements even applied to Kincaid because they referred to hiring policy of faculty members. Despite his assertions to the contrary, Kincaid conceded in his deposition that he was a staff member, not a faculty member. Additionally, a hiring policy obviously does not refer to current employees. Although a non-decisionmaking superior's statements can be circumstantial evidence of pretext, these statements are insufficient to rebut Stillman's explanation for not renewing Kincaid's contract. Bass, 256 F.3d at 1107 (concluding that a non-decisionmaking superior's statements can be circumstantial evidence that the hiring decision was based on

12

race rather than on legitimate factors).[8]

Consequently, Kincaid failed to establish that Stillman discriminated against him based on age or race.

2.    <u>Whether the EEOC Determination Raised a Genuine Issue of Material Fact</u>

Next, Kincaid argues that the magistrate judge erred in excluding the EEOC determination.  As noted earlier, however, the magistrate judge initially ruled the EEOC determination inadmissible but later reversed his order.  Nevertheless, after the reversal, the magistrate judge did not mention the EEOC determination in the order granting summary judgment for Stillman.

First, the magistrate judge was not required to defer or make reference to the EEOC determination; the magistrate judge had to conduct a <u>de novo</u> review of the claims.  <u>Moore v. Devine</u>, 767 F.2d 1541, 1549-51 (11th Cir. 1985), <u>modified on reh'g</u>, 780 F.2d 1559, 1560 (11th Cir. 1986) (clarifying that EEOC determinations for federal employees are different and may be binding on the courts).  The EEOC determination merely stated that the EEOC concluded that Stillman discriminated against Kincaid and others based on age and race; it did not provide analysis as to why it reached that conclusion.  Upon review of the evidence, the magistrate judge

---

[8] To the extent that Kincaid argues that McNealey transferred his duties back to the Division of Student Affairs just prior to his termination, we find this evidence unpersuasive in showing that McNealey was a decisionmaker in Kincaid's termination.

determined that Kincaid failed to raise a genuine issue of material fact as to whether Stillman discriminated against him. We are unpersuaded by Kincaid's contention that the EEOC determination raised a genuine issue of material fact regarding his claims of discrimination. Accordingly, we find that the magistrate judge did not abuse his discretion.

3.   <u>Whether the Magistrate Judge Abused His Discretion in Striking Carter's Declaration</u>

Finally, Kincaid argues that the magistrate judge abused his discretion by striking portions of Carter's declaration. Kincaid correctly asserts that "Rule 56 does not require declarants to be court reporters." Carter's declaration suffers, however, because it leaves the finder of fact without the opportunity to analyze the conversation. Without presenting any indication of the actual words used during the alleged conversation, Kincaid asked the magistrate judge to accept Carter's conclusory interpretation of the conversation. We conclude that the magistrate judge did not abuse his discretion in striking Carter's declaration.

For the above reasons, we **AFFIRM** the magistrate judge on all issues.