[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 28, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-15627
Non-Argument Calendar
_____

D. C. Docket No. 05-00115-CV-RLV-1

CHANDRA F. HENDERSON,

Plaintiff-Appellant,

versus

WAFFLE HOUSE, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(June 28, 2007)**

Before BLACK, MARCUS and FAY, Circuit Judges.

PER CURIAM:

Chandra F. Henderson appeals the entry of summary judgment in favor of Waffle House, Inc. on her sexual harassment and retaliation claims, brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a), 2000e-3(a). On appeal, Henderson argues that the district court erred by failing to consider the for-cause determination prepared by the Equal Employment Opportunity Commission (EEOC) or evidence from the EEOC's file that she presented in opposition to Waffle House's motion for summary judgment. She further challenges the district court's findings that she failed to establish a prima facie case of sexual harassment or retaliation. For the reasons set forth more fully below, we affirm.

We review the district court's ruling on summary judgment de novo. Rojas v. Florida, 285 F.3d 1339, 1341 (11th Cir. 2002). The moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). If the non-moving party bears the ultimate burden of proof regarding the claim at issue, that party, in response to a properly supported motion, must go beyond the pleadings and establish, through competent evidence, that there truly is a genuine, material issue to be tried. Celotex

2

Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). However, a "mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). "When deciding whether summary judgment is appropriate, all evidence and reasonable factual inferences drawn therefrom are reviewed in a light most favorable to the non-moving party." Rojas, 285 F.3d at 1341-42 (citation and quotation marks omitted).

Under Title VII, discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex" is an "unlawful employment practice." 42 U.S.C. § 2000e-2(a)(1). A claim of sexual harassment based on harassment by a supervisor requires an employee to show:

> (1) that he or she belongs to a protected group; (2) that the employee has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment must have been based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable.

Mendoza v. Borden, Inc., 195 F.3d 1238, 1245 (11th Cir. 1999) (en banc) (citation and footnote omitted).

3

Harassment is severe or pervasive for Title VII purposes only if it is both subjectively and objectively severe and pervasive. Harassment is subjectively severe and pervasive if the complaining employee perceives the harassment as severe and pervasive, and harassment is objectively severe and pervasive if a reasonable person in the plaintiff's position would adjudge the harassment severe and pervasive. When determining whether harassment is objectively severe and pervasive, courts consider the frequency of the conduct, the severity of the conduct, whether the conduct is physically threatening or humiliating, or a mere offensive utterance, and whether the conduct unreasonably interferes with the employee's job performance.

Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 509 (11th Cir. 2000) (citations and quotation marks omitted). In making this determination, we look to the totality of the circumstances. Mendoza, 195 F.3d at 1246. However, "'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (1998) (citation omitted).

Title VII also prohibits discrimination by an employer "against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter . . . ." 42 U.S.C. § 2000e-3(a). Where a plaintiff supports her Title VII claim with circumstantial evidence, we analyze her claim using the framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Wilson v. B/E Aerospace, Inc., 376

4

F.3d 1079, 1087 (11th Cir. 2004). Under the McDonnell Douglas framework, the plaintiff has the initial burden of establishing a prima facie case. McDonnell Douglas Corp., 411 U.S. at 802, 93 S.Ct. at 1824. To establish a prima facie case of retaliation forbidden by Title VII, the plaintiff must show that: (1) she participated in an activity protected by Title VII; (2) she suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse employment decision. Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 587 (11th Cir. 2000).

Title VII protects individuals who have informally voiced complaints to their superiors. Shannon v. Bellsouth Telecomms., Inc., 292 F.3d 712, 715 n.2 (11th Cir. 2002). A plaintiff must demonstrate that she had a subjective, good-faith belief that her employer was engaged in unlawful employment practices and that her belief was objectively reasonable in light of the facts and record presented. Little v. United Techs., Carrier Transicold Div., 103 F.3d 956, 960 (11th Cir. 1997). The plaintiff's subjective belief is measured against the substantive law at the time of the offense. Lipphardt v. Durango Steakhouse of Brandon, Inc., 267 F.3d 1183, 1187 (11th Cir. 2001). Although the conduct opposed need not "actually be sexual harassment, . . . it must be close enough to support an objectively reasonable belief that it is." Clover v. Total Sys. Servs., Inc., 176 F.3d

5

1346, 1351 (11th Cir. 1999). To establish the causal connection required by the third prong, the plaintiff must show that the decision-makers were aware of the protected conduct and that the protected activity and the adverse employment action were not wholly unrelated. Gupta, 212 F.3d at 590.

We have reviewed the EEOC's for-cause determination. See Kincaid v. Bd. of Trs., Stillman College, No. 05-15974, manuscript op. at 13-14 (11th Cir. June 27, 2006) (unpublished) (rejecting the plaintiff's contention that the EEOC determination raised a genuine issue of material fact); Horne v. Turner Constr. Co., No. 04-14775, manuscript op. at 7 (11th Cir. June 21, 2005) (unpublished) (holding that the district court should have taken into consideration in the summary judgment proceeding the EEOC's finding that there was reasonable cause to believe that discrimination occurred and that the court erred by failing to do so). We have also reviewed the evidence from the EEOC file, to the extent that it is pertinent to the issue of whether Henderson established a prima facie case on her claims and is reducible to an admissible form. See Rowell v. BellSouth Corp., 433 F.3d 794, 800 (11th Cir. 2005) ("On motions for summary judgment, we may consider only that evidence which can be reduced to an admissible form."). However, upon consideration of the parties' briefs and the record on appeal, we discern no error in the district court's conclusions that Henderson failed to

6

establish a <u>prima facie</u> case of sexual harassment or retaliation.

Henderson was employed as a waitress at a Waffle House restaurant in Cordele, Georgia. In support of her sexual harassment claim, Henderson relies upon the following evidence in support of her argument that she established a genuine issue of material fact as to the severity and pervasiveness of the harassment: (1) the EEOC's for-cause determination, which found that Jesse Stinson, the manager of the Cordele Waffle House, sexually harassed her; (2) co-worker Jeremy Aultman's testimony that sexual harassment was a regular and rampant problem at the Cordele Waffle House and at every Waffle House in which he worked; (3) assistant manager Hezekiah Howard's testimony that he was accused of sexual harassment, but nothing happened as a result of the accusation; and (4) evidence that Stinson pulled her hair, called her "Dolly," made remarks about the size of her breasts on more than one occasion, and refused to give her an apron because of his opinion about the size of her breasts.

In her deposition, Henderson stated that Stinson made the following comments of a sexual nature during the last two months of her employment: (1) Stinson called her "Dolly"; (2) in a conversation about a new shirt, Stinson told her, "you just look like you're going to burst" and started laughing; (3) when she asked Stinson for an apron, Stinson said that they did not make aprons "big enough

7

for people with boobs like mine"; (4) Stinson told her not to stand so close to him because it made him nervous and told her he would get in trouble if he said why; and (5) Stinson pulled her hair, and said she had horse hair and that it was greasy. In her EEOC interview, Henderson stated that Stinson made a comment about her large breasts in front of a customer. It is unclear whether or not this is a separate incident from the ones described in her deposition.

Even if being called "Dolly," Stinson's comment that he would get in trouble if he said why Henderson's presence made him nervous, and having one's hair pulled and commented upon in this manner is sexual in nature, these incidents are insufficient to create a genuine issue of material fact as to whether harassment was sufficiently severe or pervasive so as to alter the terms and conditions of employment. See Mendoza, 195 F.3d at 1247-49 (holding that a supervisor's acts of rubbing his hip against the plaintiff's hip while touching her shoulder and smiling, looking at her groin area while making a sniffing sound, and "constantly" staring and following her, over an eleven-month period, were insufficient as a matter of law to sustain a "hostile environment" sexual harassment claim). The EEOC for-cause determination found that Henderson was "subjected to verbal sexual harassment" by Stinson and that the evidence supported a violation of Title VII. The finding that Stinson verbally sexually harassed Henderson is essentially

8

duplicative of the incidents of harassment Henderson described. To the extent that Henderson is arguing that the EEOC determined that the harassment was sufficiently severe and pervasive, the EEOC did not explicitly make this finding and provided no analysis that would support such a finding. The EEOC's for-cause determination, therefore, is insufficient to create a genuine issue of fact as to the severity or pervasiveness of the harassment. See Bald Mountain Park, Ltd. v. Oliver, 863 F.2d 1560, 1563 (11th Cir. 1989) ( "Mere conclusions and unsupported factual allegations are legally insufficient to create a dispute to defeat summary judgment."); see also Walton v. Johnson & Johnson Servs., Inc., 347 F.3d 1272, 1279 (11th Cir. 2003) ("Not all forms of conduct that may be described as 'harassment,' however, affect a 'term, condition, or privilege' of employment within the meaning of Title VII."). With regard to evidence of sexual harassment occurring at Waffle Houses in general and the Cordele Waffle House in particular, there is no evidence that any of this harassment involved Henderson. In addition, Aultman described the harassment he witnessed as consisting of "talk" or jokes by co-workers, not managers.

On her retaliation claim, Henderson points to evidence that Stinson was heard using inappropriate language with her and was heard making comments about her breasts to demonstrate that she had an objectively and subjectively

9

reasonable belief that Stinson was engaging in an unlawful employment practice. She argues that, contrary to the district court's conclusion that occasional jokes about her breast size were insufficient, this should have created a genuine issue of fact. Although the conduct opposed need not "actually be sexual harassment, . . . it must be close enough to support an objectively reasonable belief that it is." Clover, 176 F.3d at 1351. In this case, the conduct Henderson described is insufficient to support an objectively reasonable belief that Stinson was engaging in an unlawful employment practice. See Faragher, 524 U.S. at 788, 118 S.Ct. at 2283 ("'[S]imple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'") (citation omitted).

Even if we were to find Henderson's belief objectively reasonable, Henderson cannot establish a casual connection between her complaint to Howard and to her division manager, Melissa Ann Perry, the night before she was fired and her termination. Henderson argues that Perry was "likely" involved in her termination, an argument she bases on the fact that Perry had hiring and firing authority. However, this evidence does not permit a reasonable inference that Perry was involved in Henderson's termination. Stinson testified that he made the decision to terminate Henderson, and did not confer with anyone else, apart from

10

Henderson, about the decision. Perry testified that unit managers and district managers have responsibility for hiring and firing associates within each division and that unit managers had the authority to terminate a sales person in their restaurant without consulting anyone. Therefore, even if Henderson's complaint sufficiently informed Perry that she was opposing an unlawful employment practice, Henderson is essentially speculating that Perry had a role in her termination. See Raney v. Vinson Guard Serv., Inc., 120 F.3d 1192, 1198 (11th Cir. 1997) ("Summary judgment cannot be avoided, though, based on hunches unsupported with significant probative evidence."). In addition, the remainder of Henderson's complaints cannot reasonably be viewed as opposition to an unlawful activity, there is no evidence that Howard relayed any of Henderson's complaints to Stinson, and the conversation Susan Aultman had with Stinson, telling him that what he said was "ugly," that he hurt Henderson's feelings, and that it was not professional, cannot reasonably be viewed as putting him on notice that Henderson was engaged in protected conduct.

In light of the foregoing, we

**AFFIRM.**

11