**Brenda L. BARFIELD,**
**Plaintiff–Appellant,**

v.

**ORANGE COUNTY, Orange County**
**Sheriff's Dept., et al., Defendants,**

**Lawson Lamar, individually, Lawson Lamar, in his official capacity as Sheriff of Orange County, Defendant–Appellee.**

**No. 89–3340.**

United States Court of Appeals,
Eleventh Circuit.

Sept. 12, 1990.

Homero Leon, Jr., Orlando, Fla., for plaintiff-appellant.

Jeffrey G. Slater, Pitts, Eubanks, Hilyard, Orlando, Fla., for defendant-appellee.

Before KRAVITCH and COX, Circuit Judges, and DYER, Senior Circuit Judge.

COX, Circuit Judge:

Brenda L. Barfield brought this civil rights action against Lawson Lamar individually and in his official capacity as Sheriff of Orange County, Florida. The complaint included a variety of civil rights claims pursuant to 42 U.S.C. § 1981, 42 U.S.C. § 1983 and Title VII, 42 U.S.C. § 2000e et seq. Barfield had been employed by the Sheriff as a corrections officer. She alleged, among other things, that she was the victim of racial discrimination in connection with her employment by the Sheriff, that her employment was terminated by the Sheriff because of her race (she is black), and that this termination violated her due process rights under the Fourteenth Amendment. All claims except for the Title VII claim were tried to a jury; the Title VII claim was simultaneously tried to the court. The jury found for the Sheriff, after which the trial judge also found in favor of the Sheriff. Barfield appeals, and we affirm.

## I. ISSUES ON APPEAL

Barfield raises a number of issues on this appeal; only two of them merit discussion. First, she argues that the trial court erred in denying her *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), challenge to the Sheriff's use of two of his peremptory challenges to excuse black persons on the venire. Second, she argues that the trial court erred in permitting the Sheriff to offer in evidence during the jury trial a report of the Equal Employment Opportunity Commission (EEOC) and a report of the Florida Unemployment Appeals Commission concerning their investigation of Barfield's complaints, including her complaint that her termination was discriminatory.

The issues we address do not require a detailed statement of the facts.

## II. THE BATSON ISSUE

During jury selection, counsel for Sheriff Lamar used two of his three available peremptory challenges to strike the only two black persons called and seated. The following discussion took place at a sidebar conference:

MR. LEON: Your Honor, since we are up here, can I bring the objections that I have to the challenges?

THE COURT: Certainly. Any objections you have.

MR. LEON: There is a case called Baston [sic] vs. Kentucky, Supreme Court case, and, Your Honor, we learned a couple of weeks ago, the Eleventh Circuit, of course, adopted the same appropriateness test. What we have, Your Honor, we have two blacks on the jury and both of the blacks have been peremptorily challenged by the Defendant.

We feel that under Batson, to perempt all the blacks on the panel—there were two ladies—and they are required to articulate a particular reason why the Defendants have, because presumption upon this case is that it's racially motivated and this is a race case, Your Honor. We are very concerned that the only two blacks on the whole venire were struck by Defendants.

MR. SLATER: Judge, as to one juror who was employed with the Orlando Regional Medical Center, that was Ms. Sills, we have to, of course, keep in mind part of the problem in making decisions about her under the circumstances, we have, we don't really know a whole lot about these people and voir dire is fairly abbreviated, so we necessarily have to go on some fairly superficial impression.

I felt that Ms. Sills was looking at me, and looking at my client, and looking at the Defendant's table with an expression that conveyed to me some hostility, and it was my gut feeling, based on her facial expression that she was likely to not be fair and impartial to the Sheriff. For that reason, I feel that we should strike her.

As for Ms. Lemon, I believe was the other juror that was struck. She was a long time, I think 20 year employee, Orange County School Board. It's been my experience when selecting jurors who are employees of the School Board and representing the School Board myself, that these people tend to be extremely pro-labor and pro-employee. And it's for that reason I felt that there was a strong likelihood that Ms. Lemon might be biased in favor of the Plaintiff in this case.

THE COURT: Exception noted. I'll leave it.

(Thereupon, the Bench Conference was concluded.) (R.6 at 33–35). The jury was then seated and sworn, after which the following colloquy occurred:

MR. LEON: Your Honor, if I may, as a point of clarification, I don't know. Earlier, when we talked about the two black jurors being perempted by the Defendant, I didn't want to appear I was acquiescing to the reasons put forth by Defense Counsel as being legitimate and not being pretext. I wanted to make it clear I wasn't acquiescing as to the reasons.

THE COURT: I don't know whether you agree with it or don't agree with it; you didn't say. But I don't think that's an issue.

MR. LEON: I wanted to make that point clear. Thank you, Your Honor.

THE COURT: All right.

(R.6 at 36).

The *Batson* matter was not mentioned again until after the verdict, when it was asserted in Barfield's motion for a new trial. In a written order denying the motion the court said:

> At the time plaintiff raised objection to the challenge made of the jurors, defendant's explanation of the reason for the challenge seemed reasonable and indicated it was a judgment call. It clearly appeared to be a neutral explanation related to the case and gave no indication the challenge was for other than a neutral reason.

In *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court held that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." 476 U.S. at 89; 106 S.Ct. at 1719. The Court went on to hold that once a defendant establishes a prima facie case that potential jurors have been struck on account of race, the burden shifts to the State to come forward with a racially-neutral explanation for the challenge.

In *Fludd v. Dykes,* 863 F.2d 822 (11th Cir.1989), this court held that *Batson* applies in civil cases. In describing the applicable procedures, the *Fludd* court said:

> [W]hen the objecting party shows that "he is a member of a cognizable racial group" and that the "relevant circumstances raise an inference" that his opponent "has exercised peremptory challenges to remove from the venire members of [the objecting party's] race," the objecting party has made out a prima facie case of purposeful discrimination. *Batson,* 476 U.S. at 96, 106 S.Ct. at 1723. Once this prima facie showing is made, "the burden shifts to [the opponent] to come forward with a neutral explanation for [the challenges]." *Id.* at 97, 106 S.Ct. at 1723. The "explanation need not rise

to the level justifying exercise of a challenge for cause," *id.;* rather, it need only be "a neutral explanation related to the particular case to be tried." *Id.* at 98, 106 S.Ct. at 1723.

*Fludd,* 863 F.2d at 829.

■ The question of whether a juror is peremptorily challenged for a discriminatory reason is a question of fact, *Batson v. Kentucky,* 476 U.S. at 98, n. 21, 106 S.Ct. at 1724, n. 21, subject to the clearly erroneous standard of review. *United States v. Alston,* 895 F.2d 1362, 1366 (11th Cir.1990).

Barfield contends that the reasons articulated by counsel for these challenges were pretextual on their face, and therefore that she established a prima facie case of purposeful discrimination in violation of the Equal Protection Clause. She argues that the reasons articulated for the challenges were insufficient as a matter of law. Sheriff Lamar argues that Barfield did not make out a prima facie case of discrimination and, additionally, that the court's finding that there was no discrimination was not clearly erroneous. Alternatively, Sheriff Lamar argues that a remand is appropriate to allow the court to determine the facts concerning the *Batson* claim.

Significantly, Barfield did not seek an evidentiary hearing in the trial court on the *Batson* claim, and does not on this appeal seek a remand for an evidentiary hearing. What Barfield sought in the trial court, and what she seeks here, is a holding that the reasons articulated by counsel for peremptorily challenging these jurors are insufficient as a matter of law. We proceed, therefore, to address that argument. We will assume, without deciding, that Barfield established a prima facie case of discrimination.

■ The reasons given for a peremptory challenge "need not rise to the level justifying exercise of a challenge for cause," *Batson,* 476 U.S. at 97, 106 S.Ct. at 1723, but there must nevertheless be a "clear and reasonably specific" explanation of "legitimate reasons" for the strike. *Id.* at 98, n. 20, 106 S.Ct. at 1723, n. 20 (quoting *Texas Dep't. of Community Affairs v. Burdine,*

450 U.S. 248, 258, 101 S.Ct. 1089, 1096, 67 L.Ed.2d 207 (1981)).

■ Counsel's explanation for challenging prospective juror Sills was that the juror was looking at him, looking at the Sheriff, and looking at the defendant's table "with an expression that conveyed to me some hostility" and it was counsel's "gut feeling, based on her facial expression" that she was likely to "not be fair and impartial to the Sheriff." Barfield argues that this is a vague explanation similar to the one held legally insufficient in *United States v. Horsley*, 864 F.2d 1543 (11th Cir.1989), where the explanation for the strike was "I don't have any particular reason. I just got a feeling about him as I have about Mr. Gonzalez and several others." The Sheriff, on the other hand, argues that *Horsley* is distinguishable. We agree with the Sheriff.

■ A sheriff is a highly visible figure. It was to be expected that some jurors in this case would have opinions about Sheriff Lamar. Hostile facial expressions and body language are legitimate concerns in a case in which counsel is selecting a jury to try a case against such a public figure. Additionally, this kind of demeanor can be observed in the courtroom; therefore, the truth or falsity of explanations of this kind is subject to proof.[1] Accordingly, this explanation is distinguishable from the "I just got a feeling about him" explanation condemned in *Horsley*, which is not subject to observation and not subject to proof. In *Fludd* this court noted that "eye contact with members of the venire and their expressions in response" were matters attorneys "often take into account in exercising their peremptory challenges," and matters the trial court may consider in deciding *Batson* questions. *Fludd*, 863 F.2d at 829, n. 6. We hold that the explanation offered for challenging prospective juror Sills was

not legally insufficient as a matter of law. Stated otherwise, if the explanation is credible—and we assume on this appeal that it is—it is sufficiently clear and specific to pass muster under *Batson*.

■ Counsel's explanation for challenging prospective juror Lemon was that she was a long-time, twenty year employee of the Orange County School Board; that counsel's experience had been that school board employees were extremely pro-labor and pro-employee; and that for these reasons it was very likely that Ms. Lemon might be biased in favor of the plaintiff.

Barfield argues that this explanation is obviously pretextual because two white women who also were employees of the Orange County School Board were not struck and served on the jury. The Sheriff counters that voir dire did not establish how long the other school board employees had been employed by the board, and that because the trial court did not permit "backstriking", the one peremptory challenge remaining (after the initial exercise of two challenges) could not be used to challenge either of the other two employees of the board. He argues that if he had initially struck another board employee he would have had no remaining peremptory challenges to exclude those jurors called to fill in the vacancies created by the initial peremptory challenges of both parties. (Appellee's Brief at 20).[2]

The fact that a black school board employee was challenged while white school board employees were not challenged is certainly a circumstance properly considered in resolving a *Batson* issue. We hold, however, that this explanation is not legally insufficient *as a matter of law.* Stated otherwise, we hold that the fact that the Sheriff did not challenge all school board employees does not *compel* a conclu-

---

1. Once a prima facie case of discrimination is established, trial courts should be reluctant to accept explanations of this kind because it may be the case that there is nothing to support them except counsel's statement. To some extent, however, that is true of *any* explanation offered by counsel. The credibility decision is for the trial judge.

2. The record in this case does not reflect whether the jury selection procedure employed by the court prohibited "backstriking"; Lamar says in brief that backstriking was not permitted, and Barfield seems to agree.

sion by the trial court that this challenge was racially motivated.

## III. THE EVIDENTIARY ISSUES

After Barfield's employment by the Sheriff was terminated, she filed a claim of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging, among other things, that the Sheriff had terminated her because of her race and sex, and otherwise discriminated against her in the terms and conditions of her employment. Following an investigation, the Commission determined that there was "no reasonable cause" to believe that these allegations were true. Additionally, the Florida Unemployment Appeals Commission found, following a hearing before a referee, that Barfield was not entitled to receive unemployment compensation benefits because she had been discharged for "misconduct connected with work." That finding was later affirmed by Florida's Fifth District Court of Appeal.

Barfield filed a motion *in limine* prior to trial seeking to exclude the EEOC report and the report of the unemployment compensation proceedings from being introduced in the trial before the jury. (R.2 at Tab 45). The motion asserted in a purely conclusory manner that the EEOC report was hearsay, that an EEOC report is of minimal probative value, and that its admission would prolong the trial and unduly prejudice the plaintiff. The motion also asserted that the Florida Unemployment Appeals Commission findings and conclusions should be excluded for the same reason.

EEOC reports and findings have been held to be admissible evidence and "highly probative." *Smith v. Universal Services, Inc.,* 454 F.2d 154, 157 (5th Cir.1972).[3] Other decisions holding such reports and determinations admissible include *Bell v. Birmingham Linen Service,* 715 F.2d 1552, 1554, n. 4 (11th Cir.1983); *Garcia v. Gloor,* 618 F.2d 264, 272 (5th Cir.1980), *cert. denied,* 449 U.S. 1113, 101 S.Ct. 923, 66 L.Ed.2d 842 (1981); and *Peters v. Jefferson Chemical Co.,* 516 F.2d 447, 450 (5th Cir.1975). In *Garcia* the court explained that EEOC investigative reports and determinations and a transcript of proceedings involving an unemployment compensation claim were admissible under Fed.R.Evid. 803(8), the exception to the hearsay rule for reports of public agencies.[4]

However, the preceding cases all involved bench trials. This case appears to be the first Eleventh Circuit case to require us to consider the admissibility of EEOC reports and determinations in a jury trial. Our sister circuits are split on the proper method for determining whether an EEOC report will be admissible in an employment discrimination case tried to a jury. The Ninth Circuit appears to have adopted a *per se* rule that "a plaintiff has a right to introduce an EEOC probable cause determination in a Title VII lawsuit, regardless of what other claims are asserted, *or whether the case is tried before a judge or jury.*" *Plummer v. Western Int'l. Hotels Co.,* 656 F.2d 502, 505 (9th Cir.1981) (emphasis added); *but cf. Gilchrist v. Jim Slemons Imports, Inc.,* 803 F.2d 1488, 1500 (9th Cir.1986) (admission of EEOC *age* discrimination *letter of violation* within discretion of trial judge). The Fifth Circuit approaches that position, largely foreclosing a challenge under Fed.R.Evid. 403[5]

**3.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

**4.** Fed.R.Evid. 803(8) reads as follows:
 **Public records and reports.** Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

**5.** Fed.R.Evid. 403 reads as follows:
 Although relevant, evidence may be excluded if its probative value is substantially out-

but reserving the possibility that an EEOC determination could be excluded if "the sources of information or other circumstances indicate lack of trustworthiness," the specific grounds provided in Rule 803(8)(C). *McClure v. Mexia Indep. School Dist.*, 750 F.2d 396, 400 (5th Cir. 1985).

Other circuits, recognizing that "EEOC reports are not homogeneous products; they vary greatly in quality and factual detail," *Johnson v. Yellow Freight System*, 734 F.2d 1304, 1309 (8th Cir.), *cert. denied*, 469 U.S. 1041, 105 S.Ct. 525, 83 L.Ed.2d 413 (1984), have decided that the decision whether to admit EEOC probable cause determinations in a jury trial is within the discretion of the trial judge. *See id.; Walton v. Eaton Corp.*, 563 F.2d 66, 74–75 (3d Cir.1977); *Cox v. Babcock & Wilcox Co.*, 471 F.2d 13, 15 (4th Cir.1972).

We are unwilling to say, as the Ninth Circuit seems to, that there can exist no EEOC determination in which "the sources of information or other circumstances indicate lack of trustworthiness" sufficient to justify exclusion from evidence. Although this circuit considers EEOC determinations to be "highly probative," *Smith*, 454 F.2d at 157, there may be circumstances in which that probative value, although properly considered by a trial judge in a bench trial, nonetheless is outweighed by the danger of creating unfair prejudice in the minds of a jury. *See Johnson*, 734 F.2d at 1308 & n. 1 (EEOC determination allowed into evidence in Title VII bench trial, but excluded from jury trial on claim under 42 U.S.C. § 1981). Because the decision whether to admit such reports involves so many variables, we think it best to leave the decision in the sound discretion of the district court. In deciding whether and

what parts of EEOC determinations and reports should be admitted, the district court may be guided by such considerations as whether the report contains legal conclusions in addition to its factual content, *see Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 109 S.Ct. 439, 450 n. 13, 102 L.Ed.2d 445 (1988); *Hines v. Brandon Steel Decks*, 886 F.2d 299, 302–03 (11th Cir.1989), whether the report raises questions of trustworthiness under Rule 803(8)(C), *see Hines*, 886 F.2d at 303–04; Fed.R.Evid. 803(8)(C) advisory committee's notes (suggested factors), and whether it presents problems cognizable under Rule 403, *see Hines*, 886 F.2d at 304.

In this case, Barfield urges us to exclude the EEOC determination under the authority of Rule 403 and *Johnson v. Yellow Freight System*, 734 F.2d 1304 (8th Cir.) *cert. denied*, 469 U.S. 1041, 105 S.Ct. 525, 83 L.Ed.2d 413 (1984). In *Johnson*, the court began by noting that the Supreme Court has indicated that administrative findings assessing claims of employment discrimination are admissible under Fed.R. Evid. 803(8)(C), *see Chandler v. Roudebush*, 425 U.S. 840, 863 n. 39, 96 S.Ct. 1949, 1961 n. 39, 48 L.Ed.2d 416 (1976), but upheld the trial court's exclusion of an EEOC report in a jury trial under a Rule 403 analysis. *Johnson*, 734 F.2d at 1304–05. We therefore consider whether an EEOC determination and report can be excluded from evidence in a jury trial under either Rule 403 or Rule 803(8)(C).[6]

■ The language of 803(8)(C), of course, makes no distinction between bench and jury trials; by its terms, the EEOC report is admissible "unless the sources of information or other circumstances indicate lack of trustworthiness."[7] Because the

weighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

6. After carefully reviewing the record, we are unsure whether Barfield is entitled to challenge the admission of the EEOC probable cause determination under Rule 803; Barfield's only clear objection on Rule 803 grounds was to the admission of the report of the Florida Unem-

ployment Appeals Commission. However, Barfield has consistently argued that this court should adopt the reasoning in *Johnson*, which articulated an exception to the general rule of admissibility of EEOC determinations under 803(8)(C). We will therefore assume that Barfield has properly raised an argument for exclusion of the EEOC determination under 803.

7. The rule also "makes no distinction between federal and nonfederal offices and agencies," Fed.R.Evid. 803 advisory committee's note. For

change from a bench to a jury trial does not affect the *trustworthiness* of an EEOC determination, we conclude that analysis under 803(8)(C) should be no different in a jury trial than in a bench trial. Apart from bare allegations that admission of the report would cause unfair prejudice and delay, Barfield offers no evidence that the EEOC materials admitted here suffer from any defects in trustworthiness. We thus conclude that the trial court did not err in admitting the EEOC determinations under 803(8)(C).

 However, the change from a bench to a jury trial may very well affect the analysis under Rule 403. The admission of an EEOC report, in certain circumstances, may be much more likely to present the danger of creating unfair prejudice in the minds of the jury than in the mind of the trial judge, who is well aware of the limits and vagaries of administrative determinations and better able to assign the report appropriate weight and no more. Barfield's arguments under Rule 403, however, are little more specific than those under 803(8)(C); the only additional argument of any significance is that the EEOC spoke only to "management" in preparing its investigation report.[8] This contention is not entirely accurate: it appears, from a review of the lengthy EEOC file in the record, that the EEOC investigator considered all information that *either* party cared to submit, but conducted no other investigation. Under these circumstances we conclude that the trial judge did not err

in deciding that the danger of unfair prejudice was too little to overcome the "highly probative" nature of this evidence.

We hold that the trial court did not abuse its discretion in admitting either the EEOC report or the Florida Unemployment Appeals Commission findings and conclusions.

AFFIRMED.

---

that reason, and because a finding of misconduct is clearly relevant to a charge that an employee has been fired not for any proper reason but because of racial discrimination, this discussion is also applicable to the admission of the report of the Florida Unemployment Appeals Commission.

8. Barfield also forcefully urges that to admit the "expert opinion" of the EEOC determination while excluding the proffered testimony of her expert witness on whether she was a victim of racial discrimination is highly inequitable and evidence of unfair prejudice from the admission of the determination. This argument, however, mistakes the nature of the finding of the EEOC report. A finding of intentional racial discrimination (or here, its absence) is a finding of fact.

*Pullman–Standard v. Swint,* 456 U.S. 273, 285–90, 102 S.Ct. 1781, 1788–91, 72 L.Ed.2d 66, 77–81 (1982); *Stallworth v. Shuler,* 777 F.2d 1431, 1433 (11th Cir.1985). Rule 803(8)(C) explicitly makes such evaluative reports admissible, regardless whether they contain factual opinions or conclusions, *Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 170, 109 S.Ct. 439, 450, 102 L.Ed.2d 445, 463 (1988). Expert witnesses, on the other hand, are permitted to tender their "expert opinions" only in areas where they assist the trier of fact by the application of specialized knowledge, training, or experience generally not found in lay persons. *See* Fed.R.Evid. 702 advisory committee's note. The trial judge did not abuse his discretion in concluding that the expert testimony proffered by Barfield would not assist the trier of fact. *See* Fed.R.Evid. 704 advisory committee's note.