[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 24, 2006
THOMAS K. KAHN
CLERK

No. 06-10878
Non-Argument Calendar

_____

D. C. Docket No. 05-00124-CR-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GARY LAMAR WALTHOUR,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(October 24, 2006)**

Before CARNES, BARKETT and PRYOR, Circuit Judges.

PER CURIAM:

Gary Lamar Walthour appeals his convictions and sentence for possession of

cocaine and crack cocaine, in violation of 21 U.S.C. § 844; manufacture of crack

cocaine, in violation of 21 U.S.C. § 841(a)(1); and possession of a firearm by a

convicted felon, in violation of 18 U.S.C. § 922(g).  On appeal, Walthour argues

that the district court erred in: (1) denying his motion to suppress evidence; (2)

granting the government's Batson motion to overrule Walthour's peremptory strike

of two jurors; (3) allowing the government to impeach a defense witness with a

conviction from 1971; (4) preventing Walthour from offering evidence that the

cocaine found in his home belonged to other residents; and (5) misapprehending its

authority under United States v. Booker, 543 U.S. 220 (2005), to depart from the

Sentencing Guidelines.

## I. Denial of Motion to Suppress

Walthour argues that the affidavit supporting the warrant to search his

home, which detailed three controlled buys, the last of which took place two days

before officers obtained the warrant and nine days before the warrant was

executed, did not give rise to probable cause.  We review de novo the district

court's determination that the warrant was supported by probable cause, and we

review its factual findings for clear error, giving due deference to the court's

inferences from those findings.  United States v. Jiminez, 224 F.3d 1243, 1248

(11th Cir. 2000).

A search warrant establishing probable cause "state[s] facts sufficient to justify a conclusion that evidence or contraband will probably be found at the premises to be searched." United States v. Martin, 297 F.3d 1308, 1314 (11th Cir. 2002). The affidavit must establish "a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity," id., and it must establish that probable cause exists *at the time the warrant was issued*. United States v. Bervaldi, 226 F.3d 1256, 1264 (11th Cir. 2000). While there is "no [universal] time limit for when information becomes stale," we have stated that, "where an affidavit recites a mere isolated violation[, . . .] it is not unreasonable to believe that probable cause quickly dwindles with the passage of time." Id. at 1265. "On the other hand, if an affidavit recites activity indicating protracted or continuous conduct, time is of less significance." Id. In deciding whether information presented in support of a search warrant is stale, we examine (1) the length of time between when the information was obtained and the warrant's execution; (2) the nature of the suspected crime; (3) the habits of the accused; (4) the character of the items sought; and (5) the nature and function of the premises to be searched. Id.

In Bervaldi, we found that information regarding the defendant's residence in a house was comparable to evidence of protracted or continuous criminal

activity, and on that basis we held that such information was not stale when the warrant was issued six months later. Id. at 1265-66. In the present case, although two of the transactions referenced in the challenged affidavit occurred months before the warrant application, the most recent transaction transpired within 72 hours of when the affidavit was sworn and nine days before Walthour's home was actually searched. If the Bervaldi warrant was not stale, logic dictates that the contested warrant in this case was not stale either. Accordingly, we affirm the district court's denial of Walthour's suppression motion.[1]

## II. **Grant of Government's *Batson* Motion**

Because a district court's determination of the reason for a juror's dismissal is a finding of fact, we will not overturn it "unless it is clearly erroneous or appears to have been guided by improper principles of law." United States v. Ochoa-Vasquez, 428 F.3d 1015, 1039 (11th Cir. 2005). Thus, in reviewing a district court's "resolution of a Batson challenge," we give "great deference" to the court's "finding as to the existence of a prima facie case." Id.; see also Novaton, 271 F.3d at 1001 ("A district court's findings regarding whether a peremptory strike was exercised for a discriminatory reason largely involve credibility

---

[1] Walthour also complains of mistakes regarding his weight, social security number, and hairstyle, but these do not bear on whether there was probable cause to believe there were drugs at the premises searched.

4

determinations and are therefore entitled to great deference.").

Walthour argues that he offered sufficient race-neutral reasons for striking jurors Alan Tanenbaum and Sandra Lynch. He asserts that Lynch was struck because she gave a "dirty look" to his counsel, who was the only person to observe the allegedly hostile expression. However, because district courts are entitled to be skeptical of minimally supported allegations of such fleeting and subjective conduct, see Barfield v. Orange County, 911 F.2d 644, 648 n.1 (11th Cir. 1990), we cannot say that the district court clearly erred in its credibility determination against Walthour's counsel. As for Tanenbaum, Walthour claimed that he was struck for owning a business and living in the area for 34 years. But even after Walthour's strikes, three business owners and four people who had lived in the area longer than Tanenbaum were left in the jury box. As Walthour did not object to these other jurors, the district court did not clearly err in discrediting his proffered reasons for striking Tanenbaum. Accordingly, we affirm the district court's Batson rulings.

## III. Impeachment of a Defense Witness with a 1971 Conviction

Walthour argues that the district court committed reversible error when it allowed the government to impeach his father, Robert Price, with evidence of a 1971 conviction. We review for an abuse of discretion a district court's decision to

5

admit evidence of prior convictions.  United States v. Pritchard, 973 F.2d 905, 908 (11th Cir. 1992).  "Evidentiary . . . errors do not constitute grounds for reversal unless there is a reasonable likelihood that they affected the defendant's substantial rights; where an error had no substantial influence on the outcome, and sufficient uninfected evidence supported the verdict, reversal is not warranted."  United States v. Christopher, 923 F.2d 1545, 1550 (11th Cir. 1991).

Evidence of a witness's conviction is not admissible if more than ten years have elapsed since the date the witness was convicted or released from prison. Fed.R.Evid. 609(b).  Nevertheless, an older conviction may be introduced if "the court determines, in the interests of justice, that the probative value of the conviction . . . substantially outweighs its prejudicial effect."  Id.  In order to introduce an older conviction, however, the adverse party must be given written notice and "a fair opportunity to contest the use of such evidence."  Id.  Thus, even if the probative value of Robert Price's conviction warranted its introduction, the government failed to provide Walthour the required notice and opportunity for contestation.  Therefore, the government should not have been permitted to introduce the conviction in evidence.

Nevertheless, the district court's evidentiary error was harmless.  The evidence against Walthour was overwhelming, as he was found in the same room

6

as a loaded firearm, and in a house containing cocaine, crack cocaine, and the materials for transforming one substance into the other. Officers discovered no personal affects belonging to Tracy Conley, whom Walthour claimed owned the drugs found in the home. In light of this evidence, and Walthour's failure to convincingly refute it, we find no reversible error as to this claim.

## IV. Exclusion of Testimony about the Police Report

Walthour argues that the district court committed reversible error when it prevented him from introducing evidence – Deputy Danny Pittman's testimony about a police report submitted by Tracy Conley – tending to refute the government's claim that Walthour lived alone at the house where he was arrested. We review the district court's ruling on this matter for an abuse of discretion. Jiminez, 224 F.3d at 1249. Again, "an erroneous evidentiary ruling will result in reversal only if the resulting error was not harmless" – that is, unless 'there is a reasonable likelihood that it affected the defendant's substantial rights.'" United States v. Hands, 184 F.3d 1322, 1329 (11th Cir. 1999). In deciding whether an error substantially affected the outcome, we weigh the record as a whole against the evidence of the defendant's guilt. See id.

Because Conley's statements in his police report were inadmissible hearsay, the district court did not abuse its discretion in preventing Deputy Pittman from

testifying to them. "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). "Hearsay is not admissible except as provided by [the Federal Rules of Evidence] or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress." Fed.R.Evid. 802. Statements in police reports made by individuals other than the reporting officer, like those which Walthour sought to introduce, constitute hearsay upon hearsay, and are therefore inadmissible. In re Boshears, 110 F.3d 1538, 1542 n.4 (11th Cir. 1997) (citing Fed.R.Evid. 805). Moreover, as noted above, any error in this regard would have been harmless, as ample evidence supported Walthour's convictions. Accordingly, we affirm as to this issue.

## V. **Booker Error**

In his sentencing memorandum, Walthour argued that the district court should vary downward from the Sentencing Guidelines because the Guidelines overstate the seriousnes of crack offenses, particularly in their 100-to-1 cocaine-to-crack ratio. Walthour claims on appeal that, in refusing to vary downward on this basis, the district court failed to appreciate its authority under Booker to impose a non-Guidelines sentence. We disagree. The district court explicitly and repeatedly referred to the *advisory* Guidelines, and this acknowledgment was not merely

gestural. The court expressly considered mitigating evidence of Walthour's criminal history and personal characteristics, and explained its consideration of other § 3553(a) factors, including just punishment, adequate deterrence, and the nature, circumstances, and seriousness of the offense. Accordingly, Walthour's sentence, like his convictions, is

**AFFIRMED.**