[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 9, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-12496
Non-Argument Calendar

_____

D. C. Docket No. 05-00421-CV-FTM-33-SPC

DENISE L. BLANTON,

Plaintiff-Appellant,

versus

UNIVERSITY OF FLORIDA, by and
through the Board of Trustees
of the University of Florida,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(April 9, 2008)

Before BIRCH, CARNES and BARKETT, Circuit Judges.

PER CURIAM:

Denise L. Blanton appeals the jury's verdict in favor of the University of

Florida ("UF") as to her retaliation claims brought pursuant to Title VII of the

Civil Rights Act, 42 U.S.C. § 2000e-3(a). She argues that the district court erred in

allowing testimony as to EEOC findings regarding her previous discrimination

charge against UF. We AFFIRM.

## I. BACKGROUND

Denise Blanton filed a complaint against UF in September 2005, alleging

unlawful employment retaliation. More specifically, she asserted that UF's letter

of reprimand, based upon her conduct at a December 2004 meeting, had been in

retaliation for her filing of an EEOC charge of race and gender discrimination the

previous October. Blanton later amended her complaint to include a second count

alleging that the "effective[] terminat[ion]" of her position in January 2006 had

been in unlawful retaliation for her having filed the lawsuit. The case ultimately

went to trial before a jury. R1-18 at 3.

Before trial, Blanton filed a motion in limine seeking to prevent UF from

offering into evidence testimony and exhibits related to the EEOC's findings with

regard to her October 2004 discrimination charge. This charge alleged that

Blanton's demotion from her position as the Collier County Extension Director and

the related denial of a salary increase constituted discrimination on the basis of

race and gender. Blanton argued that the district court should exclude evidence of the EEOC findings under Federal Rule of Evidence 403 because "[t]he admission of an EEOC report, in certain circumstances, may be much more likely to present the danger of creating unfair prejudice in the minds of the jury[.]" R3-89 at 2 (citing Walker v. NationsBank of Fla. N.A., 53 F.3d 1548, 1554 (11th Cir. 1995)).

UF responded that EEOC determinations are relevant and probative at a later proceeding regarding whether there has been a Title VII violation. UF asserted that any EEOC determination related to either of the two EEOC grievances upon which Count One of Blanton's lawsuit was based[1] was relevant to decide that claim, and should be admitted into evidence. Further, UF argued, Blanton's bare recitation of the holding in Walker was insufficient to show how and why the probative value of the EEOC's determination was substantially outweighed by the danger of unfair prejudice. Despite citing Rule 403, UF asserted, Blanton had failed to demonstrate how she would be unduly prejudiced by the introduction of evidence that was "clearly probative . . . [of] the ultimate issue of retaliation." R3-92 at 5.

The district court denied Blanton's motion, finding that admission of the

[1]Count one alleged retaliation (in the form of a letter of reprimand) for Blanton's having filed the first EEOC charge. Count one was filed on the basis of the right to sue letter resulting from the second EEOC charge, which alleged that same retaliation. Count two is based on an additional allegation of retaliation for which Blanton did not file an EEOC charge.

EEOC determination appropriately placed the retaliation claim in the larger context of the lawsuit. The court also stated that it would give a limiting instruction directing the jury to use the EEOC determination merely as "background information," and not to consider the findings therein binding or otherwise conclusive of any factual issue in the case. R5 at 33.

At trial, Blanton, a Hispanic female, testified to the following. She had worked for the University of Florida Collier County extension program from 1975 to 2007 and served as County Extension Director from 1991 to 2004. Forty percent of the funding for her position was provided by the county, and the remaining sixty percent was provided by UF. Id. at 170. At all times during her employment, she had two immediate supervisors, one from UF and the other from the county. Charles Vavrina, the District Extension Director, had become Blanton's UF supervisor in 2000. Blanton asserted that, during her time as County Extension Director, her overall job performance had been rated as "outstanding." Id. at 172.

Blanton reported that she had filed a complaint with the EEOC in October 2004 alleging race and sex discrimination after she was demoted from her position as County Extension Director. On 25 January 2005, she received a letter of reprimand from Vavrina in response to several complaints Vavrina had received

concerning her conduct at the Lawn and Garden Show Wrap-Up meeting held in

December 2004.  Vavrina wrote to Blanton:

> [b]ased on the large number of complaints from various sources about your professional conduct and your past history of similar complaints, I am legitimately concerned that the behavior you reportedly displayed on December 14, 2004 . . . is compromising our abilities to carry out essential Extension duties and programs.  This type of behavior will not be tolerated and if continued you could face disciplinary action up to and including dismissal.

Exh. Folder 1-96, exh. 34.

Blanton testified that she was not proud of her conduct at the meeting.  She

explained that she had been in a hurry to make a medical appointment downtown,

was under "an awful lot of stress," and had become  "anxious and nervous" when

she realized that the items she had planned to discuss were at the end of the lengthy

agenda.  R5 at 175-177.  These circumstances prompted her to express her opinion

that the agenda had been poorly organized, but she had not shouted or used

profanity, or personally attacked anyone present at the meeting.  She stated that, in

her 30 years with the extension program, she had never received any similar

complaints about her performance, and believed that Vavrina had been instructed

by his superiors at UF to write the letter.  Blanton further stated that she considered

the letter to be a threat to her job, and that, while no other reason besides her

conduct at the meeting was given for the reprimand, she "felt [her] whole existence

5

was one of stress and observation, and so forth." Id. at 179-180.

On cross-examination, Blanton admitted that the individuals who submitted complaints regarding her behavior at the meeting had been unaware of her October 2004 EEOC charge. She also acknowledged that she had not lost any rank or pay as a result of the reprimand. When questioned about the results of the EEOC's investigation of her October 2004 discrimination charge, Blanton objected on Rule 403 grounds. The district court overruled the objection, but explained to the jury that "[w]hile the [EEOC's] findings may provide you with background . . . [you] should not consider the findings as conclusive of any factual issue in this case . . . [and] should not consider these findings binding in your determinations of the facts in this case." R6 at 240. In response to defense counsel's question, Blanton admitted that the EEOC had found no cause for her complaint. When questioned regarding the results of the EEOC's investigation of her retaliation complaint, Blanton again objected on Rule 403 grounds, and the district court again overruled the objection. Blanton admitted that the EEOC had also found no cause for a finding of retaliation after investigating that charge.

Blanton also presented the testimony of Charles Vavrina, the District Extension Director for UF and Blanton's supervisor during the relevant period, who testified that he had written the letter of reprimand to Blanton in response to

6

numerous complaints he had received regarding her conduct during the December meeting. The purpose of the letter was to express concern over behavior that had previously been identified as problematic. When asked whether the letter was a form of discipline, Vavrina responded that "it was more of a reiteration of consistent behavior" and constituted the second step in the UF's progressive disciplinary process, following an April 2003 evaluation that had put Blanton on notice that her behavior was becoming unacceptable. R5 at 61. Vavrina further testified that, while he was aware that Blanton had filed a charge of discrimination with the EEOC, the January 2005 letter of concern was not retaliatory, but was warranted based upon the complaints he had received about Blanton, and was written in order to "bring a second attention to a behavior issue that seem[ed] to be continuing." Id. at 122. He stated further that Blanton did not lose any pay or rank as a result of the reprimand.

With respect to her second claim of retaliation, Blanton testified that she had received a copy of a letter in early January 2006 from James Mudd, the County Manager, stating that the county would no longer provide funding for the Learn to Lead Program. The letter stated that the county would withdraw its funding on 27 January 2006, and that "[t]his action [would] effectively eliminate the Collier County Senior Extension Agent position." Exh. Folder 1-96, exh. 40. Although

7

Blanton's complaint alleged that she was "effectively terminated" from her position as Senior Extension Agent when the county decided to withdraw its Learn to Lead funding, see R1-18, it appears that Blanton remained employed by UF for a year after her position was eliminated, see R5 at 197-203; Exh. Folder 1-96, exhs. 41-47.

Blanton testified that, subsequent to the county's decision to withdraw funding, she had received a letter from UF informing her that she needed to apply for other positions. This letter stated that, in accordance with UF rules governing permanent status faculty members, Blanton would be reassigned to a temporary position at UF for the following year, with the understanding that she would first apply for any similar vacant county positions, and, "[i]f [she] [had] not secured another Extension Agent position by the end of the year which end[ed] January 29, 2007, this temporary employment and [her] permanent status with UF [would] be terminated." Exh. Folder 1-96, exh. 41. Blanton explained that she believed she would have to undergo the entire application process in order to maintain a position with UF, and she believed that she had little to no chance of procuring another job within the UF system because she was "an emotional and physical wreck," and would be applying for a job with the same people who had told her that she would be terminated within the year. R5 at 199. Blanton acknowledged

that the county, a governmental agency entirely distinct from UF, made the decision to withdraw funding for her position, and that 100% of her salary was paid by UF thereafter. She also conceded that she had never applied for another position within the UF system after the county withdrew funding for her former position, even though UF had informed her of other job openings.

Blanton further testified that she was treated differently by her employers, "held at arm's length," and "constantly afraid of what else was going to happen" after she filed her claims in September 2005. Id. at 184. In October 2005, she was told she had to transfer immediately from the research center, where she had been stationed, back to the county office, even though she had been told in August that her transfer would not become effective until February 2006. She testified that her leave requests, which had never been denied in the past, had been closely scrutinized and denied in November 2005, and asserted that she had been subjected to a hostile work environment. In February 2006, she was reassigned to work from home, which adversely affected her ability to perform the duties of her position successfully. According to Blanton, she was never given an explanation for her reassignment.

Vavrina testified that the decision to withdraw funding for Blanton's position in the Learn to Lead Program was made by the county, not UF. He had

9

not taken part in the decision, and denied having suggested, up the UF chain of command, that Blanton should be terminated. Vavrina further testified that none of the actions taken by UF in reassigning Blanton to a temporary position, placing her on administrative leave for one week, and requesting documentation in support of her 30-day leave of absence, were retaliatory.

Marla Ramsey, a Collier County public services administrator, testified that county officials discussed the program cuts with Vavrina and another UF employee, Robert Halman. During these conversations, county officials and UF also discussed the reorganization within the UF extension service in response to community needs. When asked whether the subject of retaliation concerning Denise Blanton was raised during the conversations about the reorganization, Ramsey responded that "[t]here was a. . . some caution to make sure that we treat all employees the same during the reorg." R6 at 313. Ramsey clarified that no one had specifically mentioned any "retaliation" charges, but that the county and UF were concerned with ensuring that each employee affected by the reorganization was treated equally. Id. Ramsey further stated that UF extension officials told the county that UF would provide full funding for Blanton's position after the decision to pull the county's funding became effective because Blanton had tenure, and that Blanton would thereafter be a full-time employee of UF. Ramsey testified on

cross-examination that the county withdrew funding for the Learn to Lead Program because of a duplication of services. According to Ramsey, the county had its own leadership program, which it ran through the its human resources department, and Blanton was not the only person affected by the reorganization. At the conclusion of Ramsey's testimony, Blanton rested.

After the district court denied UF's motion for a directed verdict, UF presented the following evidence. Regarding Blanton's claim of retaliation based on the letter of reprimand, UF called several witnesses, six of whom testified that Blanton's behavior at the December 2004 meeting had been rude, unprofessional, and offensive. Four of these witnesses had written letters to Vavrina complaining about Blanton's conduct, but stated that they did not "target" Blanton, nor write these letters to help UF retaliate against her. R7 at 376, 392, 407; Exh. Folder 1-96, exh. 31; Exh. Folder 1-97, exhs. J, K. Other witnesses testified that counseling was justified and warranted based upon Blanton's inappropriate behavior at the meeting. See, e.g., R7 at 451. Finally, Celia Hill, the Lee County extension director, confirmed that approximately four employees had complained to her that Blanton had been rude to the volunteers and to the group during the meeting.

With respect to Blanton's second claim of retaliation, UF presented three witnesses who testified that the county, not UF, made the decision to cut funding

11

for the Learn to Lead Program which resulted in the elimination of Blanton's position. Millie Ferrer, an associate dean at UF, testified that she was not involved in any way in the county's decision to withdraw funding from the Learn to Lead Program, and that Blanton had been informed of job openings and encouraged to apply after her position was terminated. Over Blanton's Rule 403 objection, the district court allowed Ferrer to testify that the EEOC's investigations of Blanton's 2004 discrimination and 2005 retaliation charges had resulted in no findings of unlawful activity. Ferrer further testified that Blanton had been assigned to work from home in February 2006 because, following the funding cut, Blanton did not have a position, and there was no place to put her.

Jean Merritt, the Collier County Human Resources director, testified that the county had decided to withdraw funding for the Learn to Lead Program because it duplicated a training program already offered by the Human Resources Department and not because Blanton had filed an EEOC complaint. She confirmed that UF had not pressured the county into making the decision to pull funding for the program. Marcie Krumbine, director of Collier County Housing and Human Services, testified that the county was not interested in continuing the Learn to Lead Program because it preferred a program that focused more generally on leadership skills and  development, and less on identifying and solving specific

problems using leadership skills, which was how Blanton had described her program to the county. UF also introduced documentary evidence showing a pattern of performance issues related to Blanton's employment with the extension service. The EEOC determinations themselves were not admitted into evidence.

At the close of all of the evidence, UF moved again for a directed verdict, which the district court denied. In closing, defense counsel referred to Blanton's October 2004 EEOC charge of discrimination, stating that "we know the results of that charge. We know the result[ ] was no finding." R7 at 478. A few moments later, Blanton objected under Rule 403 to defense counsel's statement that she had filed her claims after the EEOC found no cause for her retaliation claim. Id. at 480. The district court overruled the objection. After summations, the district court instructed the jury, stating, inter alia, that:

> The lawsuit involves retaliation claims, which are separate and different from the discrimination claims . . . [T]he evidence needed to prove a discrimination claim differs significantly from evidence needed to prove a retaliation claim. Thus, to render your verdict, you need not determine whether the University of Florida discriminated against Ms. Blanton. Ms. Blanton asserts two claims of retaliation against the University of Florida. On the first claim, she alleges that the University of Florida retaliated against her[] when they wrote a letter of concern dated January [2]5, 2005, because she filed a charge with the Equal Employment Opportunity Commission. . . on the basis of sex and race. In the second claim, she alleges that the University of Florida retaliated against her by terminating her because she filed the instant lawsuit . . . . So, even if a complaint of discrimination against an employer is later found to be invalid and without merit, the

13

employee cannot be penalized in retaliation for having made such a complaint if you find the employee made the complaint as a means of seeking to enforce what the employee believed, in good faith, to be her lawful rights.

R7 at 496-98. In its written instructions, the district court again advised the jury that it need not determine whether UF discriminated against Blanton in order to render its verdict. The jury returned a verdict in favor of UF, as to both counts of the complaint, finding that Blanton failed to prove by a preponderance of the evidence that she suffered an adverse employment action after she filed the discrimination charge and the instant lawsuit, respectively.

On appeal, Blanton asserts that, because the sole issues at trial were whether UF retaliated against her for filing that EEOC complaint, and whether UF retaliated against her again after she filed the present lawsuit, no issues of discrimination were before the jury.[2] Accordingly, she argues that the EEOC's determination was irrelevant, or even if relevant, that its limited probative value was substantially outweighed by the danger of unfair prejudice, and therefore, it

---

[2] In her initial brief, Blanton challenges only the district court's admission of testimony related to the EEOC's ultimate findings with regard to her October 2004 charge alleging discrimination on the basis of sex and race. Any challenges to the district court's admission of testimony related to the EEOC's ultimate findings with regard to her EEOC retaliation charge have therefore been abandoned. See United States v. Ford, 270 F.3d 1346, 1347 (11th Cir. 2001) (per curiam) (holding that "issues and contentions not timely raised in the briefs are deemed abandoned").

14

should have been excluded under Rule 403.

## II. DISCUSSION

We review a district court's ruling on the admissibility of evidence under a deferential abuse of discretion standard. Goulah v. Ford Motor Co., 118 F.3d 1478, 1483 (11th Cir. 1997). Thus, "[w]e will not overturn an evidentiary ruling unless the moving party proves a substantial prejudicial effect." Id.

Title VII prohibits an employer from retaliating against an employee "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, a plaintiff must show that: "(1) she participated in an activity protected by Title VII; (2) she suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse employment decision." Gupta v. Florida Bd. of Regents, 212 F.3d 571, 587 (11th Cir. 2000). Title VII's anti-retaliation provision "does not confine the actions and harms it forbids to those that are related to employment or occur at the workplace," but also covers those actions that are "materially adverse to a reasonable employee." Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, __, 126 S. Ct. 2405, 2409 (2006). Under this standard, the plaintiff must show that the employer's actions were so adverse

as to discourage a reasonable employee "from making or supporting a charge of discrimination." Id.

EEOC determinations are generally admissible under the public records and reports exception to the hearsay rule contained in Federal Rule of Evidence 803(8)(C), unless "the sources of information or other circumstances indicate lack of trustworthiness" sufficient to justify exclusion from evidence. Barfield v. Orange County, 911 F.2d 644, 650-51 (11th Cir. 1990); see Fed. R. Evid. 803(8)(C). However, EEOC determinations may be excluded from evidence in a jury trial under Rule 403 where the probative value of the determination is "outweighed by the danger of creating unfair prejudice in the minds of a jury." Barfield, 911 F.2d at 650. Whether EEOC determinations may be admitted under Rule 403 is a decision left to the sound discretion of the district court. Id.

We have held that a district court does not abuse its discretion in admitting an EEOC determination that concerns the same discrimination claim as that before the jury, where sufficient evidence was adduced at trial to place the determination in its proper context, and the district court instructed the jury as to the appropriate use of the determination by explaining that it is not an adjudication of rights and liabilities. See Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1288, 1289 (11th Cir. 2008).

16

In this case, Blanton has failed to demonstrate that testimony regarding the EEOC's no-cause determination as to her prior EEOC charge of discrimination was unduly prejudicial, especially in light of the district court's limiting instruction, which minimized any potential undue influence by explaining to the jury that Blanton's retaliation claims were separate and distinct from her prior EEOC discrimination charge, and that it need not find that Blanton had been discriminated against in order to find that UF had retaliated against her in violation of Title VII. See R7 at 496-98; R3 at 99. When the testimony was introduced, the district court advised the jury that the EEOC findings provided only "background," and were not conclusive of any factual issue related to Blanton's retaliation claims. Id. at 240-42. This instruction clarified for the jury the probative value of the determination, and placed the determination in its proper context. See Goldsmith, 513 F.3d at 1288, 1289.

Further, aside from a handful of references to Blanton's original EEOC charge, the evidence presented at trial overwhelmingly focused on either the letter of reprimand, and the basis therefor, or the decision to cut funding for Blanton's position. Under these circumstances, the admission of testimony related to the EEOC's findings with respect to Blanton's discrimination claim was not likely to present the danger of creating unfair prejudice by shifting the focus from the

17

ultimate issue in this case – whether UF retaliated against Blanton when it reprimanded her and/or informed her that her position would be eliminated – to whether Blanton had, in fact, been discriminated against on the basis of sex and race in 2004. Because the first EEOC determination concerned Blanton's discrimination claim, and not the retaliation claims that were before the jury, evidence of the determination was less likely to create a danger that the jury would mistakenly view it as conclusive of any issue as to Blanton's retaliation claim. This argues against a finding of unfair prejudice.

Even assuming, for the sake of argument, that the danger of unfair prejudice substantially outweighed the probative value of the EEOC's determination, and that the district court therefore erred by overruling Blanton's Rule 403 objections, Blanton has failed to demonstrate that her substantial rights were prejudiced by admission of the evidence. See Goulah, 118 F.3d at 1483. The overwhelming evidence presented at trial established (1) that the letter of reprimand was warranted based on her behavior at the meeting, and (2) that Blanton did not lose any pay or rank as a result of the reprimand. Witness testimony also established that the county made the decision to withdraw funding for the Learn to Lead Program that resulted in the elimination of Blanton's position. Blanton failed to point out any evidence that UF pressured the county into making this decision.

The jury specifically found, based on this evidence, that Blanton failed to prove that she suffered an adverse employment action after either her first EEOC charge or her filing of this suit.[3] Nothing in the record suggests that, but for the district court's admission of testimony regarding the EEOC's determination, the jury might have found retaliation.

### III. CONCLUSION

Blanton appeals the jury's verdict in favor of UF as to her Title VII retaliation claims. First, we conclude that the district court did not abuse its discretion in admitting testimony as to the EEOC's no-cause determination regarding Blanton's prior EEOC charge of discrimination, particularly in light of the limiting instruction, which clarified for the jury the probative value of the determination and placed the determination in its proper context. Second, even if there had been abuse of discretion, we find that Blanton failed to present sufficient evidence to establish a retaliation claim to begin with, and therefore has failed to show that the EEOC evidence prejudiced her substantial rights. Accordingly, we **AFFIRM.**

---

[3]Blanton points out that the jury found the letter of reprimand not to constitute an adverse employment action, even after counsel for UF conceded, in closing argument, that it had been an adverse employment action, but then asserted that there was no causal connection between the EEOC charge and the letter. This, however, is an issue of confusion between the elements of a retaliation claim rather than confusion between a retaliation claim and a discrimination claim.